**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Kenneth TOUW, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 29, 2001.
Filed Aug. 8, 2001.

Daniel Silverman, Philadelphia, for appellant.

Robert A. Graci, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before: JOHNSON, HUDOCK and KELLY, JJ.

HUDOCK, J.:

¶1 This is an appeal from the order denying Appellant's petition for post-conviction collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. sections 9541–46. For the reasons that follow, we vacate the order and remand the case for further proceedings.

¶2 On July 28, 1998, an information was filed charging Appellant with sixteen counts of delivery of a controlled substance (cocaine) and one count of criminal conspiracy to deliver a controlled substance (cocaine).[1] On September 17, 1998, Appellant pled guilty to four counts of delivery pursuant to a plea agreement with the Commonwealth.[2] The trial court sentenced him on November 3, 1998, to pay fines totaling $5,000.00 and to undergo imprisonment for a total of six and one-half to thirteen years. No post-sentence motions were filed on Appellant's behalf, and no appeal was taken.

¶3 On October 15, 1999, new counsel filed a PCRA petition on Appellant's behalf. The petition alleged numerous instances of ineffectiveness of trial counsel, including failure to consult with Appellant regarding the propriety of an appeal. The petition requested that Appellant's appellate rights be reinstated *nunc pro tunc* or that a new trial be granted. On March 10, 2000, the PCRA court conducted a hearing at which four witnesses, including Appellant and plea counsel, testified. At the hearing, Appellant's counsel stated, "Judge[,] we're only here today to determine whether my client's appellant [sic]

rights should be reinstated. The merits, the underlining [sic] merits, of those claims that he would otherwise raise on appeal in my view are not before the Court today." N.T., 3/10/00, at 3. On April 5, 2000, the PCRA court entered an opinion and order denying Appellant's petition. The court considered only the issue of counsel's alleged ineffectiveness in not pursuing an appeal, as that was the only issue preserved at the hearing. This timely appeal followed.

¶4 Appellant presents the following issues for our consideration:

1. Did appellant voluntarily waive his state constitutional right to a direct appeal where his lawyer failed to ever consult with him about the propriety of an appeal, even though counsel himself believed that the sentencing court had committed a fundamental legal error?

2. Did the PCRA court err in denying appellant's timely request to have his direct appeal rights reinstated by focusing exclusively on whether appellant told his lawyer that he wanted to appeal without considering whether counsel had an independent obligation to consult with appellant about the propriety of an appeal?

3. Assuming this Court agrees to entertain in this appeal appellant's substantive legal claims, did the sentencing court err in applying appellant's prior record score of "one" to each of the four counts before the court where these multiple drug convictions arose out of the same transaction and contiguous train of criminal events?

4. Did the investigating and arresting officers, all agents of the Bureau of Narcotics Investigation of the Attorney General's Office, lack jurisdiction to in-

---

1. 35 P.S. § 780–113(a)(30) and 18 Pa.C.S.A. § 903(a), respectively.

2. These counts involved deliveries occurring between February and September 1993 and between July and September 1995.

vestigate and arrest appellant, and was trial counsel ineffective for failing to raise this issue?

Appellant's Brief at 3.

 ¶ 5 "Our review of a PCRA court's grant or denial of relief is limited to examining whether the court's determination is supported by the evidence and whether it is free of legal error." *Commonwealth v. Davis,* 760 A.2d 406, 409 (Pa.Super.2000), *appeal denied,* 525 Pa. 595, 575 A.2d 561, 2001 Pa. Lexis 922 (Pa. May 2, 2001). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Nelson,* 393 Pa.Super. 611, 574 A.2d 1107, 1110 (1990). The findings of the post-conviction court will not be disturbed unless they have no support in the record. *Commonwealth v. Neal,* 713 A.2d 657, 660 (Pa.Super.1998). The PCRA court found the following facts:

1. Prior to sentencing, [Appellant] completed a Written Guilty Plea Colloquy in which he answered "yes" to the following questions:

24. But if you do plead guilty, you give up your right to appeal your guilty plea *except* on three (3) grounds:

1.) That the guilty plea was not made voluntarily or you did not understand what you were doing when you plead [sic] guilty.

2.) That the court could not accept your guilty plea because the crime or crimes did not occur in Wayne County.

3.) That the judge's sentence is unlawful or improper.

Do you understand these grounds of appeal?

25. You may also appeal your guilty plea if you believe your attorney was incompetent in representing you or otherwise acted improperly in advising you to plead guilty. Do you understand this?

26. If you do wish to appeal your guilty pleas based on these grounds, you must petition the court to withdraw your guilty plea either before you are sentenced or within ten (10) days after you are sentenced. If the court does allow you to withdraw your guilty plea, then you go to trial on the charges against you. If the court does not allow you to withdraw your guilty plea, you may appeal that decision to the Superior Court within thirty (30) days after you are sentenced. Do you understand this?

2. [Appellant] initialed each page of the colloquy and also signed it.

3. [Appellant] and [plea counsel] met immediately prior to sentencing, at that time [plea counsel] utilized a sentencing memorandum which contained a graph.

4. At that time, [plea counsel] explained to [Appellant] various subjects including a legal sentence, an illegal sentence, the Court's discretion in imposing sentence, sentencing options, and appellate rights.

5. After sentencing, the Court advised [Appellant] of his appellate rights and [Appellant] indicated he understood.

6. After sentencing, [plea counsel] met with various members of [Appellant's] family, including his mother and step-father.

7. At that time, [plea counsel] informed family members he didn't believe there were sufficient grounds to challenge the sentence.

8. Immediately after sentencing, [plea counsel] wrote a letter to [Appellant], care of Robert J. Myer ( [Appellant's] step-father) in which he state[d] he didn't recommend filing a Motion to Modify Sentence because the sentence imposed was within the standard range

if the prior record score of 1 was not applied to the three less serious counts.

9. After sentencing, [Appellant] remained in the Wayne County Prison for a two or three day period.

10. During this period, [Appellant] telephoned his mother.

11. [Appellant] never, in any way or form, requested [plea counsel] to file an appeal to the Superior Court.

12. PCRA counsel agreed that [Appellant] failed to ask [plea counsel] to file an appeal.

PCRA Court Opinion, 4/4/00, at 2–4. We have carefully reviewed the certified record, including the transcript of the sentencing hearing and the transcript of the PCRA hearing, and we find ample support therein for the PCRA court's findings, with the exception of finding number seven.

¶ 6 Plea counsel, Appellant's stepfather, and Appellant's mother testified consistently that counsel conveyed his opinion that the trial court had erred in applying the sentencing guidelines.[3] After that point of agreement, the testimony of plea counsel and Appellant's parents diverged. Appellant's parents testified that counsel told them that, although an appeal would probably be successful, the trial court would likely sentence Appellant more harshly on remand. Counsel denied having said that an appeal would probably be successful, but as of the day of the hearing he still believed that his interpretation of the guidelines was correct. He also denied having said that the trial court would

impose a harsher sentence on remand. He testified that he advised Appellant's parents against an appeal because the end result would likely be the same sentence. Counsel believed that to be the likely outcome because the sentence imposed by the trial court fell within the standard range produced by his interpretation of the guidelines. Thus, although counsel at one point summarized his advice to Appellant's stepfather as being that he "did not believe there were grounds to challenge sentence," N.T., 3/10/00, at 22, that characterization does not accurately capture the substance of his advice.

¶ 7 We must now examine whether the court's determination is free of legal error. We begin by noting that this case does not fit within the rule articulated by our Supreme Court in *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999). The Court held:

[W]here there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases, denies the accused the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, as well as the right to direct appeal under Article V, Section 9, and constitutes prejudice for purposes of Section 9543(a)(2)(ii) [of the PCRA]. Therefore, in such circumstances, and where the remaining requirements of the PCRA are satisfied, the petitioner is not required to estab-

---

3. In particular, plea counsel had argued to the trial court that the case fell under the provisions of the Sentencing Guidelines that required the trial court to apply the prior record score only to the offense with the highest offense gravity score when imposing sentences for convictions arising out of the same transaction. *See* Section 303.6(a) of the revised third edition of the Sentencing Guidelines (covering crimes committed on or after

August 9, 1991, and before August 12, 1994, the effective date of the fourth edition) and section 303.7(a) of the fourth edition (covering crimes committed on or after August 12, 1994, and before June 13, 1997, the effective date of the fifth edition). The Commonwealth concurred in this interpretation, but the trial court applied Appellant's prior record score to each of the four counts on which it was sentencing Appellant.

lish his innocence or demonstrate the merits of the issue or issues which would have been raised on appeal.

*Id.* at 226–27, 736 A.2d at 572 (footnote omitted). This Court has subsequently held that *"Lantzy* did not obviate the requirement that the petitioner first prove that he requested an appeal before he is entitled to relief." *Commonwealth v. Harmon,* 738 A.2d 1023, 1024–25 n. 5 (Pa.Super.1999), *appeal denied,* 562 Pa. 666, 753 A.2d 815 (2000). "[B]efore a court will find ineffectiveness of trial counsel for failing to file a direct appeal, Appellant must prove that he requested an appeal and that counsel disregarded this request." *Id.* at 1024. As Appellant concedes that he did not request an appeal, relief under *Lantzy* is foreclosed.

■ ¶ 8 Appellant directs our attention to *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), wherein the United States Supreme Court addressed the question: "Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?" *Id.* at 477, 120 S.Ct. 1029. The Court began its analysis by addressing a separate, but antecedent, question: "whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478, 120 S.Ct. 1029. The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* The Court continued:

If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

*Id.* The Court answered this question by holding:

[C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Id.* at 480, 120 S.Ct. 1029. A deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his or her appellate rights; the defendant must show prejudice. The Court held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S.Ct. 1029.

¶ 9 Although Appellant argued before the PCRA court that he was entitled to reinstatement of his appellate rights under *Flores–Ortega,* the PCRA court did not address this issue and did not make adequate findings of fact to permit appellate review of this issue. More detailed findings are needed. If the PCRA court is unable to make the required findings based on the existing record, a new hearing will be necessary.

■ ¶ 10 First, we note that counsel's discussions with Appellant's parents after sentencing did not satisfy the consultation requirement of *Flores–Ortega,* which requires consultation with the defendant. Nor did the letter to Appellant's stepfather. However, counsel may have satisfied that requirement in his pre-sentencing discussions with Appellant. Counsel testi-

fied that he discussed with Appellant before sentencing everything he discussed with his parents after sentencing. N.T., 3/10/00, at 28, 32. Counsel discussed with Appellant's parents the advantages and disadvantages of taking an appeal. Such a discussion with Appellant would have constituted consultation for purposes of *Flores–Ortega,* but the PCRA court made no finding as to whether a discussion of this nature did or did not occur. The court found that plea counsel "explained to [Appellant] various subjects including a legal sentence, an illegal sentence, the Court's discretion in imposing sentence, sentencing options, and appellate rights." PCRA Court Opinion, 4/4/00, at 3. In order to evaluate this case under *Flores–Ortega,* we need to know whether the various subjects discussed included the advantages and disadvantages of taking an appeal.

¶ 11 Such a finding is necessary because it is clear that counsel had a duty to consult with Appellant under the circumstances of this case. Counsel was of the opinion that the trial court misapplied the sentencing guidelines, and the Commonwealth agreed with counsel's proposed application of the guidelines (although not with counsel's proposed sentence). Although counsel believed that an appeal was not likely to yield Appellant a reduced sentence, he acknowledged that a reduced sentence was a possibility. N.T., 3/10/00, at 29. Under those circumstances, there was reason to believe that a rational defendant would want to appeal.

¶ 12 If the PCRA court finds that counsel did not discuss the prospects for an appeal with Appellant, a finding will be necessary regarding whether Appellant would have timely appealed but for counsel's failure to consult. Appellant testified that he would "[m]ost definitely" have considered appealing had counsel consulted with him about an appeal. *Id.* at 15. That testimony must be weighed against the fact that Appellant made no effort to contact counsel during the appeal period and waited almost one year before filing his PCRA petition. Also relevant is the evidence suggesting that Appellant's parents may have conveyed to him the substance of counsel's advice to them. Such credibility determinations are for the PCRA court. *Commonwealth v. Fanase,* 446 Pa.Super. 654, 667 A.2d 1166, 1170 (1995).

¶ 13 Appellant's third and fourth issues presented are conditioned on our deciding that the trial court improperly denied Appellant reinstatement of his appellate rights. Because we have not so decided, these issues are not properly before us. Moreover, Appellant failed to include them in the concise statement of matters complained of on appeal filed pursuant to the PCRA court's order under Rule of Appellate Procedure 1925(b). They are, therefore, waived. *Commonwealth v. Lord,* 553 Pa. 415, 420, 719 A.2d 306, 309 (1998).

¶ 14 Order vacated. Case remanded. Jurisdiction relinquished.