COMMONWEALTH of Pennsylvania,
Appellee

v.

Michael MARKOWITZ, Appellant.

Superior Court of Pennsylvania.

Submitted June 20, 2011.
Filed Aug. 29, 2011.

Kenneth A. Snarey, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney and Sandra Preuhs, Assistant Dis-

trict Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, PANELLA, and FITZGERALD,* JJ.

OPINION BY BOWES, J.:

Michael Markowitz appeals from the order denying his first PCRA petition, which was filed in 1994. We affirm.

Appellant pled guilty to robbery and criminal homicide on March 6, 1981, as well as numerous other crimes not relevant herein. The murder and robbery charge stemmed from a shooting that occurred during an armed robbery of a pharmacy in Hampton Township, Allegheny County. Appellant's co-defendant gave a statement to police implicating Appellant as the shooter. In addition, two eyewitnesses, the mother and son of the victim, identified Appellant from a photographic police lineup as the individual who committed the killing. The son of the victim physically wrestled the firearm away from Appellant. After an extensive guilty plea hearing, the trial court accepted Appellant's plea. Following a degree-of-guilt hearing, the trial court found Appellant guilty of second-degree murder and deferred sentencing. Ultimately, the court sentenced Appellant to the mandatory term of life imprisonment. Appellant did not file post-sentence motions, which were required at that time to preserve any issues for appeal, nor did he seek a direct appeal.

In 1994, after the enactment of the PCRA, but prior to the adoption of the one-year jurisdictional time bar of the current PCRA statute, Appellant submitted his first PCRA petition. The trial judge who presided over Appellant's plea no longer was a sitting judge and the case was assigned to Judge John A. Zottola. Judge Zottola appointed original PCRA counsel, who withdrew for health reasons. New counsel was appointed and filed an amended petition in March 1997. In that petition, Appellant asserted that he was denied an effective and meaningful opportunity to pursue collateral relief or a direct appeal. Subsequently, counsel amended that petition to include a more specific claim: that Appellant's Sixth and Fourteenth Amendment equal protection and due process rights were violated because there were no available copies of the plea and sentencing hearing transcripts and Appellant could not obtain a meaningful direct appeal.

The Commonwealth filed an answer averring that it was prejudiced due to Appellant's thirteen-year delay in seeking post-conviction relief. See 42 Pa.C.S. § 9543(b). The PCRA court scheduled a hearing on the prejudice matter for December 9, 1997. Apparently, no hearing was held because the matter was transferred to a second judge, who also scheduled an evidentiary hearing on the issue of prejudice to the Commonwealth. That judge thereafter recused himself since he had served as a juvenile probation officer for Appellant. The matter was reassigned to the Honorable Jeffrey A. Manning. Judge Manning scheduled a hearing on December 14, 2001. Before that hearing occurred, the Commonwealth submitted an affidavit indicating that the notes of Appellant's plea and sentencing could not be transcribed because one court reporter was deceased and another could not be located.[1]

The court, on December 17, 2001, heard argument on the effect of the parties' inability to obtain the transcripts. The Com-

---

* Former Justice specially assigned to the Superior Court.

1. Both court reporters were, in fact, deceased.

monwealth insisted that the lack of transcripts prejudiced its ability to defend against Appellant's claims. PCRA counsel disputed that the Commonwealth was prejudiced, and approximately one year later, filed a brief in support of Appellant's petition. However, prior to the court rendering a decision, counsel withdrew because she was employed as a law clerk and the courts no longer permitted law clerks to be appointed to represent defendants. The PCRA court appointed several different attorneys who each withdrew before the court appointed present counsel.

Counsel filed a third amended PCRA petition and thereafter provided the court with a brief and supplemental brief. In those filings, counsel raised four separate issues. Appellant's initial claim, again, was premised on the denial of a direct appeal. The Commonwealth responded, maintaining that prejudicial delay precluded any relief. Appellant replied, and the court issued a notice of intent to dismiss in July 2007, citing prejudicial delay to the Commonwealth. A final order followed, and Appellant sought review from this Court. In an unpublished memorandum, this Court reversed and remanded, determining that under the PCRA statute, an evidentiary hearing was required prior to a dismissal due to an allegation of prejudicial delay. *Commonwealth v. Markowitz*, 951 A.2d 1213 (Pa.Super.2008) (unpublished memorandum); *see also* Pa. R.Crim.P. 908(A)(1).

After remand, on August 28, 2008, the PCRA court conducted the requisite hearing. During that hearing, the Commonwealth established the following. The Hampton Township lead investigator in the case died in 1987. The Allegheny County homicide division, which was in charge of the investigation, no longer possessed any physical evidence or file related to the matter as the physical evidence was destroyed by court order after a 1996 flood. In addition, an officer who interviewed Appellant's co-defendant was deceased, and three other criminal homicide detectives involved in the case had also passed away, including one of the principal investigators. Specifically, Detectives Henry Watson and Richard Martin were the lead Allegheny County detectives investigating the robbery and homicide. Detective Watson was deceased at the time of the evidentiary hearing and Detective Martin was retired and believed to be residing in Tennessee. The officer who was responsible for showing the eyewitnesses the photographic array was also no longer living. Neither the Commonwealth nor Appellant presented any evidence regarding the status of the two family members of the victim who witnessed the crime.

Thereafter, the parties learned that the guilty plea hearing notes of testimony were available, and the court directed that those transcripts be transcribed. On March 8, 2010, the transcripts were filed. Appellant then provided a supplement to his amended petition. The Commonwealth replied shortly thereafter, and the PCRA court scheduled a hearing solely to determine whether Appellant was entitled to reinstatement of his post-sentence and direct appeal rights. Following that hearing, the court dismissed Appellant's PCRA. This appeal ensued.

Appellant's lone contention on appeal is that he is entitled to reinstatement of his direct appeal rights. More specifically, Appellant asserts that plea counsel was ineffective because Appellant informed him to correct his judgment of sentence, which was tantamount to requesting an appeal, and plea counsel should have more adequately consulted with Appellant regarding his desire to file a direct appeal. *See* Appellant's brief at 2.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa.Super.2010). This review is limited to the findings of the PCRA court and the evidence of record. *Id.* We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. *Id.* This Court may affirm a PCRA court's decision on any grounds if it is supported by the record. *Id.* Further, we afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *Commonwealth v. Carter*, 2011 PA Super 113, 21 A.3d 680, 681–82.

■ Although the PCRA court ultimately did not dismiss the current issue on appeal due to prejudicial delay caused by Appellant's delinquent filing of his petition,[2] and Appellant maintains that the question of prejudicial delay is not presently before this Court, we find it necessary to reach the issue. *See Commonwealth v. Weinder*, 395 Pa.Super. 608, 577 A.2d 1364, 1375 (1990) (finding actual prejudice but remanding to PCRA court for determination as to whether prejudicial delay would prejudice Commonwealth's ability to retry the defendant).

■ First, in practice, it would be an exercise in futility to permit a direct appeal where Appellant cannot obtain relief in that proceeding due to operation of § 9543(b). That provision precludes a defendant from being eligible for relief due to prejudicial delay, and states:

(b) **Exception.**—Even if the petitioner has met the requirements of subsection (a), **the petition shall be dismissed if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner.** A petition may be dismissed due to delay in the filing by the petitioner only after a hearing upon a motion to dismiss. This subsection does not apply if the petitioner shows that the petition is based on grounds of which the petitioner could not have discovered by the exercise of reasonable diligence before the delay became prejudicial to the Commonwealth.

42 Pa.C.S. § 9543(b) (emphasis added). Thus, even where a defendant can establish that he was prejudiced by counsel's actions or inaction or a court's actions, § 9543(b) prevents the PCRA court from affording relief.

■ Appellant maintains that a successful sufficiency of the evidence challenge mandates discharge rather than a new trial,[3] thereby permitting Appellant relief regardless of any prejudice to the Commonwealth's ability to retry him. Ordinarily, since Appellant pled guilty, he would be limited on direct appeal to asserting that his plea was involuntary, that his sentence was illegal, or that the court lacked jurisdiction. *Commonwealth v. Main*, 6 A.3d 1026 (Pa.Super.2010). Certainly, the Commonwealth would not be prejudiced due to the passage of time relative to any sentencing and jurisdictional issues, which can be decided based on the current record. However, a direct appeal is not necessary to present those claims, as a legality of sentencing claim and jurisdictional chal-

---

2. The PCRA court dismissed all other issues raised by Appellant on prejudicial delay grounds.

3. Appellant would not be entitled to discharge since he pled guilty generally to murder; rather, he would be subject to a penalty for third degree murder. *See* discussion *infra* and footnote 4.

lenge cannot be waived and can be reviewed in the normal PCRA paradigm. *See* 42 Pa.C.S. § 9543(a)(2)(vii)-(viii); *Commonwealth v. Rivera*, 10 A.3d 1276 (Pa.Super.2010) (during PCRA review this Court *sua sponte* afforded relief on an issue labeled as an illegal sentencing matter). Hence, there is no need to reinstate a defendant's direct appeal rights where his issues pertain to the legality of his sentence or the jurisdiction of the court. These principles were clearly articulated in *Commonwealth v. Stokes*, 426 Pa. 265, 232 A.2d 193 (1967). In *Stokes*, the defendant pled guilty to murder and alleged that he was denied his right to appeal. The *Stokes* Court opined:

> A plea of guilty to murder generally is sufficient of itself to sustain a conviction of murder in the second degree. Thus[,] the only issues which would have been available for appellant to challenge on direct review would have been the validity of the plea and the lawfulness of the sentence. But since both these claims are cognizable in a collateral proceeding, the denial of the right to appellate review, even if true, would not be prejudicial.
>
> The sentence imposed is obviously authorized by the Penal Code. Accordingly[,] appellant is entitled to relief only if he can show that his guilty plea was unlawfully induced.

*Stokes, supra* at 194–195 (internal citations and footnotes omitted).[4]

If Appellant were to wage a successful claim on direct appeal that his plea was involuntary, he would be entitled to a trial, but that event is precluded herein due to prejudicial delay in filing the PCRA petition.

█ Appellant argued before the PCRA court that the initial officer who responded to the crime scene was available and that there were "several detectives retired that *maybe are still alive* that could testify for the Commonwealth in this case." N.T. PCRA hearing, 8/28/08, at 35 (emphasis added). In light of the testimony presented by the Commonwealth, we find that the Commonwealth's ability to retry Appellant for a crime that occurred over thirty years ago would be severally hampered. Numerous investigating officers are no longer available, the status of the eyewitnesses is uncertain, the case file cannot be located, and the physical evidence has been destroyed by court order.

█ This Court is cognizant of Appellant's position that the physical evidence was destroyed after Appellant filed his original petition and the government lost the case file. However, Appellant's later amended petitions were filed after the destruction of the physical evidence, and § 9543(b) does not expressly delineate that the timing of the filing of the original petition is what triggers a prejudicial delay analysis. A fair reading of the statute can include the delay in submitting an amended petition, especially in light of the language that permits dismissal if the court finds that "**at any time** that, because of **delay in filing,** the Commonwealth has been prejudiced either in its **ability to respond to the petition** or in its ability to re-try the petitioner." 42 Pa.C.S. 9543(b) (emphases added).

---

4. At the time of the decision in *Stokes,* murder in the second degree was not felony murder, but would be considered what is now third degree murder. *See Commonwealth v. Moore,* 473 Pa. 169, 373 A.2d 1101, 1103 n. 4 (1977). Felony murder was classified as murder in the first degree at that time. *See Commonwealth ex rel. Hough v. Maroney,* 425 Pa. 411, 229 A.2d 913 (1967).

■■ The "any time" language, the absence of a provision explicitly denoting that prejudicial delay can only occur by a delay in filing an original petition, and the fact that prejudice can arise in the Commonwealth's ability to respond to "the petition," which must be an amended petition where it is the defendant's first PCRA,[5] all strongly suggest that the delay in submitting an amended petition can cause prejudicial delay. *See also Commonwealth v. Renchenski,* 988 A.2d 699, 703 (Pa.Super.2010) *allowance of appeal granted,* 607 Pa. 371, 6 A.3d 1287 (2010), (finding purpose of § 9543(b) was to "ensure that the Commonwealth is not prejudiced by a defendant's delay in pursuing his post-conviction rights."). This interpretation is buoyed by the adoption of the one-year time bar, which is designed to prevent undue delay in the filing of an original petition. Under the current statute, prejudicial delay will most often result not in the filing of an original petition, but from any subsequently amended petitions. Section 9543(b) provides a mechanism to ensure that counsel and petitioners maintain some level of diligence in pursuing collateral relief both before and after the filing of an original petition.[6] In the instant case, Appellant delayed filing his original petition for thirteen years.

■ Nonetheless, Appellant would be entitled on direct appeal to a limited challenge to the sufficiency of the evidence and the admissibility of the evidence adduced at his degree-of-guilt hearing. *See Commonwealth v. Johnson,* 459 Pa. 141, 327 A.2d 124 (1974); *Commonwealth v. Hill,* 457 Pa. 1, 319 A.2d 886 (1974); *Commonwealth v. Robinson,* 442 Pa. 512, 276 A.2d 537 (1971). The original rationale for permitting sufficiency challenges relative to degree-of-guilt hearings was premised on a defendant's ability to present evidence that he did not have specific intent to kill. *See Commonwealth v. Drum,* 58 Pa. 9, 18 (1868); *Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317, 319 (1947). This rationale does not apply to felony murder, which does not require a specific intent to kill. Nevertheless, our Supreme Court has permitted degree-of-guilt sufficiency challenges to felony murder, the relevant crime herein. *See e.g. Commonwealth v. Batley,* 436 Pa. 377, 260 A.2d 793 (1970).

■ Since Appellant pled guilty generally to murder, he could not attack the malice element of homicide or any facts contained in his indictment. *See Commonwealth v. Geiger,* 475 Pa. 249, 380 A.2d 338, 340 (1977); *Commonwealth ex rel. Swilley v. Maroney,* 420 Pa. 419, 218 A.2d 242, 244 (1966) ("On this record, the plea having

---

5. Amended petitions are required on first-time PCRA cases, *Commonwealth v. Tedford,* 566 Pa. 457, 781 A.2d 1167, 1171 (2001), and the PCRA court is only permitted to address issues raised in a counseled petition. *See Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 302 (1999) ("We will not require courts considering PCRA petitions to struggle through the *pro se* filings of defendants when qualified counsel represent those defendants."); *see also Commonwealth v. Jette,* — Pa. ——, 23 A.3d 1032 (2011) (discussing bar against hybrid representation during PCRA review).

6. This does not speak to the situation where a defendant diligently and continuously seeks

review and or the assistance of counsel, and counsel and the court causes delay. *See e.g. Commonwealth v. Burkett,* 5 A.3d 1260 (Pa.Super.2010). Such delay in that case could be a violation of the petitioner's due process rights.

We also note that this interpretation ensures that capital PCRA counsel will not simply employ delay tactics. *See Commonwealth v. Spotz,* — Pa. ——, 18 A.3d 244 (2011) (Castille C.J. concurring) (discussing dilatory tactics of capital PCRA counsel); *Commonwealth v. Birdsong,* — Pa. ——, 24 A.3d 319 (2011) (Castille C.J. concurring) (same).

been accepted by the court, the court's sole inquiry was to determine the degree of guilty and the penalty. Petitioner's 'plea constituted an admission of his guilt and of all the facts averred in the indictment; it constituted a waiver of all nonjurisdictional defects and defenses.'"). However, as noted, Appellant would theoretically be allowed to contest his degree of guilt.[7] Importantly, while the guilty plea transcript exists, the record does not contain the testimony from the degree-of-guilt hearing, which occurred on March 31, 1981. Thus, the Commonwealth would be prejudiced in defending any possible direct appeal. Since the Commonwealth established prejudice, we conclude that the PCRA court properly denied Appellant relief.

■■■■ Additionally, even assuming that prejudicial delay did not occur, we find Appellant's issue is meritless. It is well settled that when a lawyer fails to file a direct appeal requested by the defendant, the defendant is automatically entitled to reinstatement of his direct appeal rights. *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999). Where a defendant does not ask his attorney to file a direct appeal, counsel still may be held ineffective if he does not consult with his client about the client's appellate rights. *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *Carter, supra.* Such ineffectiveness, however, will only be found where a duty to consult arises either because there were issues of merit to raise on direct appeal or the defendant, in some manner, displayed signs of desiring an appeal. *Roe v. Flores–Ortega, supra.*

■■■■ The PCRA court herein held that Appellant's testimony that he requested counsel to file something after he was sentenced lacked credibility. Instead, the PCRA court credited plea counsel's statements that Appellant did not request a direct appeal. In addition, although plea counsel could not specifically recollect a thirty-year-old discussion with Appellant regarding his appeal rights, counsel did state that he would "always discuss what it is we could do, if anything, with respect to what had occurred." N.T. PCRA Hearing, 8/5/10, at 10–11. Counsel further remarked that he did not believe that there were any viable appellate issues.

■■■■ Appellant contends that the PCRA court's credibility determination was "poisoned by its holding that Defendant failed to establish what, if any, claim he would have pursued on appeal and whether any such claim was non-frivolous[.]" Appellant's brief at 13. In leveling his argument, Appellant asserts that where counsel neglects to file a direct appeal, prejudice is presumed, and the merits of any claims that would have been pursued is irrelevant. Appellant points out that if counsel believes an appeal is frivolous, he must file an *Anders/Santiago*[8] brief and request permission to withdraw, rather than ignore a requested appeal.

---

7. Prior to the codification of felony murder as murder in the second degree, the common law provided that, "upon a finding of guilt, the degree statute automatically raises the murder to first degree if it happened, *inter alia*, to have been committed in the perpetration of arson, rape, robbery, burglary or kidnapping[.]" *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472, 476 (1958). Hence, admitting to facts in an indictment that a killing occurred in furtherance of the commission of a robbery automatically rendered a person guilty of felony murder. Accordingly, by pleading guilty to both the robbery of the pharmacy and the homicide, Appellant could not challenge the sufficiency of that evidence.

8. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009).

Additionally, Appellant assails the PCRA court's ruling insofar as it indicated that Appellant's testimony was the only evidence that supported his claim. Appellant maintains that his claim is premised on matters that are outside the record, *i.e.*, discussions with or a lack of consultation with counsel, necessarily rendering any record support to be derived from an evidentiary hearing and testimony from the petitioner.

The Commonwealth responds that the PCRA court's conclusion that Appellant did not request an appeal is supported by its credibility determination with respect to plea counsel's testimony. Further, the Commonwealth reasons that because counsel consulted with Appellant about his appellate rights, the issue becomes whether counsel disregarded a request for an appeal. According to the Commonwealth, since the PCRA court found that no request occurred, its holding must be upheld. In addition, the Commonwealth opines that the PCRA court's discussion of the lack of merit of any issues Appellant could have pursued on direct appeal was mere "surplusage." Commonwealth's brief at 22.

First, we acknowledge that our Supreme Court in *Lantzy, supra,* at 572, held that where there is an "unjustified failure to file a requested direct appeal," counsel is *per se* ineffective as the defendant was left with the functional equivalent of no counsel.[9] Under this situation, no discussion of the potential merit of any claims is necessary or warranted. *Id.* at 572; *see also Commonwealth v. Bronaugh,* 447 Pa.Super. 522, 670 A.2d 147, 149 (1995) (discussing that once a PCRA court determines that a petitioner sought a direct appeal, the PCRA court is prohibited from addressing the merits of any other potential claims); *Commonwealth v. Hoyman,* 385 Pa.Super. 439, 561 A.2d 756 (1989) (same).

To establish *per se* ineffectiveness, a defendant must still prove that he asked counsel to file a direct appeal. *See Commonwealth v. Touw,* 781 A.2d 1250 (Pa.Super.2001).[10] Instantly, the PCRA court concluded that there was no request for a direct appeal and that the failure to file a

9. Interestingly, there was no unjustified failure to file a direct appeal in *Lantzy;* rather, counsel filed a requested direct appeal and then withdrew the appeal because he negotiated a lesser sentence for the defendant. The defendant then appealed the lesser sentence. However, because the trial court no longer had jurisdiction to alter the defendant's sentence, this Court reversed and reinstated the original sentence. As a result, the defendant lost his ability to file a direct appeal from his original sentence until the Supreme Court found counsel ineffective and remanded for the reinstatement of his appellate rights.

10. We are cognizant that this Court in *Commonwealth v. Touw,* 781 A.2d 1250 (Pa.Super.2001), relied on *Commonwealth v. Harmon,* 738 A.2d 1023 (Pa.Super.1999), for this proposition. *Harmon* and a similar case, *Commonwealth v. Knighten,* 742 A.2d 679 (Pa.Super.1999), have been called into question by several federal pronouncements in light of *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). *See Harrington v. Gillis,* 456 F.3d 118 (3d Cir. 2006); *Durn v. Rozum,* 630 F.Supp.2d 479 (E.D.Pa.2007). *Harmon* and *Knighten* did not discuss the issue of whether counsel should have consulted with his client about filing a direct appeal, a necessary inquiry after *Flores–Ortega.* Unsurprisingly, both decisions were decided prior to *Flores–Ortega. Harmon* and *Knighten* are still viable precedent insofar as they maintain that to establish a claim of *per se* ineffectiveness, a defendant must demonstrate that counsel neglected to file a requested direct appeal. Nonetheless, *Harmon* and *Knighten* do not preclude relief merely because a petitioner cannot prove that he instructed counsel to file a direct appeal so long as the defendant properly raises the consultation issue. *See Touw, supra.*

direct appeal was justified. Since the PCRA court determined that Appellant did not ask counsel to file a direct appeal, counsel cannot be considered *per se* ineffective.

Nevertheless, the secondary query of whether counsel consulted the defendant persists. *See Flores–Ortega, supra.* In this context, however, counsel is not *per se* ineffective and a *Strickland/Pierce*[11] analysis is necessary to decide whether counsel rendered constitutionally ineffective assistance by failing to advise his client about his appellate rights. Hence, Appellant "must plead and prove: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Burkett, supra* at 1272 (citations omitted).

Where counsel has not advised his client about the client's appellate rights, the question becomes whether that failure caused actual prejudice to the petitioner, *i.e.,* "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores–Ortega, supra* at 484, 120 S.Ct. 1029. In analyzing whether there is a constitutional mandate to consult with a defendant about his appellate rights, the Supreme Court opined that a court must determine if "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480, 120 S.Ct. 1029. Where a petitioner can prove either factor, he establishes that his claim has arguable merit.

In deciding whether the petitioner suffered actual prejudice, the High Court listed several relevant factors. For example, did the petitioner plead guilty, thereby decreasing the number of appealable issues? *Id.* Pertinent considerations also include any instructions given by the court with respect to the defendant's right to appeal as well as evidence of nonfrivolous grounds for appeal. *Id.* at 479–480, 120 S.Ct. 1029. Of course, evidence of nonfrivolous grounds of appeal is not required. *Id.* at 486, 120 S.Ct. 1029.

██ In the case at bar, Appellant concedes that plea counsel timely discussed with him a possible appeal. Therefore, counsel was not ineffective for failing to consult with him. However, this does not end the matter, as Appellant alleges that counsel's advice regarding a direct appeal caused him to forego requesting a direct appeal. Specifically, Appellant asserts that counsel incorrectly informed him that he would be released within ten years, which caused him to refrain from requesting a direct appeal. Relying on *Flores–Ortega, supra,* and *Touw, supra,* Appellant maintains that even absent a request for a direct appeal, counsel was ineffective for neglecting to consult adequately with him about filing a direct appeal. He further posits that even if his issues lacked merit, counsel could have filed an *Anders* brief on appeal. Thus, Appellant asserts that counsel incorrectly advised him "that there were 'no alternatives[.]' " Appellant's brief at 13.

██ Neither *Flores–Ortega* nor *Touw* explores the adequacy of the consultation required. Nonetheless, it is evident that incorrect advice or failing to properly advise a client can be grounds for an ineffectiveness claim. *Lantzy, supra* at 572 (counsel's failure to advise his client that a sentence modification could not be achieved by withdrawing his appeal ad-

---

11. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Com-* *monwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987) (adopting *Strickland* test).

versely affected Lantzy's waiver of his appellate rights); *Commonwealth v. Boyd,* 547 Pa. 111, 688 A.2d 1172, 1175 (1997) (failure to properly explain the advantages and disadvantages of accepting or rejecting a plea offer may be ineffective assistance of counsel), *overruled on other grounds, Commonwealth ex rel. Dadario v. Goldberg,* 565 Pa. 280, 773 A.2d 126 (2001). Accordingly, where a petitioner can establish that but for counsel's erroneous advice, he would have filed a direct appeal, he is entitled to the reinstatement of his direct appeal rights.

Herein, the PCRA court found that plea counsel did not inform Appellant that he would be released within ten years of his sentence. The PCRA court also determined that, based on the guilty plea colloquy and the mandatory life sentence imposed by the trial court, plea counsel could not be ineffective for not filing an unrequested direct appeal. Assuming that plea counsel instructed Appellant that there were no meritorious issues to pursue on appeal does not render counsel ineffective simply because he could file an *Anders* brief alleging that the appeal was wholly frivolous. A claim that lacks merit is not necessarily wholly frivolous and advising a client that his issues are meritless will only be ineffective assistance if the issues were not meritless. While counsel cannot refuse to file a direct appeal because he believes there are no issues to appeal, he is not required to file an appeal that is not requested.

■ In the instant case, the PCRA court's credibility determinations prevent a finding that plea counsel incorrectly informed Appellant about his sentence. Therefore, Appellant's reason for not instructing counsel to file a direct appeal vanishes. Moreover, although plea counsel could have theoretically filed an appeal and *Anders* brief if he believed Appellant's

issues were wholly frivolous, we do not find that counsel is constitutionally required to inform his client that he may pursue a wholly frivolous appeal. It is enough that a defendant is aware that he has a right to appeal. *See Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (holding that a defendant was not prejudiced by the court's failure to advise him about his appellate rights where he had actual knowledge of his right to appeal and elected not to pursue it). As Appellant did not request an appeal nor did counsel's advice improperly cause Appellant to forego that right, we affirm.

Order affirmed.