J-S27020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN ROY FYOCK | : | |
| | : | |
| Appellant | : | No. 598 WDA 2021 |

Appeal from the PCRA Order Entered April 19, 2021
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000118-2019

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: NOVEMBER 12, 2021**

Appellant Steven Roy Fyock appeals from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition following an evidentiary hearing.  Appellant argues that the PCRA court erred in rejecting his claim that trial counsel was ineffective for failing to file a direct appeal.  We affirm.

Briefly, Appellant was convicted of receiving stolen property and related offenses after he was found in possession of a stolen tractor, which he had attempted to conceal by removing the license plate and applying new paint. On November 20, 2019, the trial court sentenced Appellant to an aggregate term of two to five years' imprisonment.  Appellant did not file post-sentence motions or a direct appeal.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

On September 22, 2020, Appellant filed a *pro se* PCRA petition raising multiple claims, including that trial counsel was ineffective for "failing to file a direct appeal and abandoning [Appellant]." *Pro Se* PCRA Pet., 9/22/20, at 6. The PCRA court appointed counsel, who requested an evidentiary hearing on Appellant's behalf.

At the hearing on January 8, 2021, the PCRA court heard testimony from Appellant, Appellant's mother, and Appellant's trial counsel, Patrick Lavelle, Esq. When asked to describe the circumstances surrounding Appellant's direct appeal, trial counsel explained:

> I went to visit with [Appellant] at the Jefferson County Jail on, I recall the date, December 16th. I'm pretty sure that's accurate. It was in my calendar that I maintain at the office, and I recall being there for a good period of time discussing with [Appellant] what had occurred in his case, discussing some of the issues. The trial was relatively clean.
>
> Most of the issues that were raised or were significant were raised in pretrial motions and in motions *in limine* prior to trial. So the issues [] were fairly clear, and out in the open before I went to meet with him. I discussed [] those issues with him. I gave him my opinion as to the chances of prevailing on an appeal on any of those issues.
>
> I recall that my opinion was that he probably would have less than a 50/50 chance of prevailing on those issues before the Superior Court. That was my opinion. We discussed a lot of things that day. We talked about the situation that his family was going to face because he was going to be away. We talked about his mom and his mom's health. We discussed -- and I discussed with him potentially what the cost would be as far as my services were concerned in filing and moving forward with an appeal.
>
> [Appellant's] legal expenses were met by his mom, and we talked about whether or not that would create a financial hardship on her. And at the end of our conversation, he indicated that he probably would not proceed with the appeal.

- 2 -

> I told him that if he wanted to change his mind, all he needed to do was get ahold of me, that we still had, I believe, five days at that point to finalize the notice of appeal, and I left the jail. After that, I did not hear from him. So I had left the jail -- when I left the jail, I was under the impression that it was his decision not to proceed with the appeal.

N.T. PCRA Hr'g, 1/8/21, 7-9.

Appellant's PCRA counsel then asked trial counsel whether he had informed Appellant that "if [Appellant] could not afford an attorney to represent him on appeal and that if he would qualify financially, the court could grant him *in forma pauperis* [(IFP)] status and/or appoint a public defender to represent him at no cost." *Id.* at 9. In response, trial counsel stated:

> I don't recall specifically that we talked about that in a formal sense. I do recall mentioning to him that we had five days and that if he wanted to change his mind, it would be a simple process to **create a notice of appeal and get it filed so as to preserve his right to appeal, and whether or not we filed an additional petition at the time for IFP or for transcripts or anything, which is traditionally done at the same time, we could do that later.** It wouldn't affect his right to appeal because those things hadn't been filed.

*Id.* at 10 (emphasis added).

Ultimately, on April 19, 2021, the PCRA court issued an order denying Appellant's petition and an opinion setting forth its statement of facts and conclusions of law. Appellant filed a timely notice of appeal and a court-

- 3 -

ordered Pa.R.A.P. 1925(b) statement.[2]  The PCRA court issued a Rule 1925(a) opinion incorporating its order and opinion denying Appellant's petition and addressing Appellant's claim that trial counsel should have filed a formal motion to withdraw.  *See* Rule 1925(a) Op., 6/2/21, at 1.

_____

[2] Therein, Appellant raised the following issues:

  1. The [PCRA] court erred when it entered its order on April 19, 2021, denying [Appellant's] PCRA petition;

  2. Specifically the [PCRA] court erred when it failed to grant [Appellant's] PCRA request to find his trial counsel ineffective and thereby granting [Appellant's] request to have his direct appeal rights reinstated;

  3. [Appellant's] trial counsel was ineffective in failing to formally file a motion to withdraw his appearance.  Had trial counsel filed a formal motion to withdraw[,] the trial court could have then taken the steps necessary to prevent the procedural default which occurred in this case by having counsel file a notice of appeal before withdrawing, and by assigning court appointed counsel to represent defendant in an appeal;

  4. In this case[,] trial counsel advised [Appellant] that an appeal would be costly, that financing an appeal would put a financial hardship on [Appellant's] mother who had financed the trial representation, that [Appellant] could file the appeal to preserve his rights and then apply for IFP status to get future costs waived.  Trial counsel did not advise defendant that he could possibly be eligible for a public defender to pursue the appeal;

  5. Trial counsel was ineffective for failing to file a direct appeal in this case in order to preserve [Appellant's] direct appeal rights.

Appellant's Rule 1925(b) Statement, 6/1/21, at 1-2.

On appeal, Appellant raises the following issue for review:

Did the [PCRA] court err in failing to find that [Appellant] was denied the effective assistance of counsel, and that he was thereby prejudiced, and reinstate [Appellant's] direct appeal rights, when his trial counsel failed to assure that [Appellant] made a knowing waiver of his rights to appeal, and/or file a direct appeal from the judgments of sentence and then file a formal motion to withdraw so that the trial court could then assign court-appointed counsel to represent [Appellant] in a direct appeal?

Appellant's Brief at 4 (some formatting altered).[3]

At the outset, we reiterate that Appellant, in his PCRA petition, claimed that trial counsel was ineffective for "failing to file a direct appeal and abandoning [Appellant]." *Pro Se* PCRA Pet., 9/22/20, at 6. Now, on appeal, Appellant appears to concede that he did not explicitly direct trial counsel to file an appeal.[4] Nevertheless, he argues that trial counsel's "course of action

---

[3] The Commonwealth did not file a brief in this matter.

[4] A claim that counsel was ineffective for failing to file an appeal when requested by the defendant is distinct from a claim that counsel was ineffective for failing to consult with a defendant. **Compare Commonwealth v. Lantzy**, 736 A.2d 564, 571-72 (Pa. 1999) (discussing claims that counsel abandoned a defendant by failing to file a requested direct appeal) **with Roe v. Flores-Ortega**, 528 U.S. 470, 480 (2000) (discussing claims that counsel failed to consult with a defendant); **Commonwealth v. Touw**, 781 A.2d 1250, 1254 (Pa. Super. 2001) (same).

Because Appellant failed to raise his claim that trial counsel was ineffective for failing to consult, or failing to adequately consult, in his PCRA petition, we could find that issue waived on appeal. **See** Pa.R.A.P. 302(a); Pa.R.Crim.P. 902(B) (stating that the "[f]ailure to state such a ground [for relief] in the [PCRA] petition shall preclude the defendant from raising that ground in any proceeding for postconviction collateral relief"). However, under the circumstances of this case, given that PCRA counsel discussed this issue at
*(Footnote Continued Next Page)*

was not reasonable in this situation" because "[a]lthough [trial counsel] discussed the merits of taking an appeal, he failed to recommend that [Appellant] seek assistance from either the court or the Public Defender's Office if he did not have sufficient funds to pay for an appeal." Appellant's Brief at 17. Appellant asserts that after his conversation with trial counsel, "[i]t should have been obvious to [] trial counsel, given his conversation on this subject, that [Appellant] was hesitant in taking an appeal as such an action would cause financial hardship upon his mother." *Id.* Therefore, Appellant contends that "[t]he proper course of action for trial counsel would have been to file a direct appeal and withdraw his appearance[, at which time] the court could then determine if [Appellant] was entitled to court appointed counsel at no cost to [Appellant] to pursue the direct appeal." *Id.*

Our review of the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (quotation marks and citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). Further, we are bound by the "PCRA court's credibility determinations, when supported by the record." *Commonwealth*

---

the evidentiary hearing and the PCRA court addressed it in its Rule 1925(a) opinion, we decline to find waiver.

*v. Spotz*, 18 A.3d 244, 259 (Pa. 2011). We review "the PCRA court's legal conclusions *de novo*." *See Miller*, 102 A.3d at 992 (citation omitted).

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffectiveness, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted).

Generally, a petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." *Id.* (citation omitted).

Before a court will find counsel ineffective for failing to file a direct appeal, the petitioner must prove that he requested an appeal and that counsel disregarded that request. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011). When counsel fails to file a requested appeal, "counsel is *per se* ineffective as the defendant was left with the functional equivalent of no counsel." *Commonwealth v. Markowitz*, 32 A.3d 706, 715

(Pa. Super. 2011) (footnote omitted). However, counsel "is not required to file an appeal that is not requested." ***Id.*** at 717.

When a defendant does not explicitly instruct counsel to file a direct appeal, counsel may still be found ineffective if counsel does not consult with the defendant about his appellate rights. ***Flores-Ortega***, 528 U.S. at 480 (2000); ***Markowitz***, 32 A.3d at 714. However, counsel has a constitutionally imposed duty to consult only when "there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." ***Flores-Ortega***, 528 U.S. at 480 (citation omitted). "Where a petitioner can prove either factor, he establishes that his claim has arguable merit." ***Markowitz***, 32 A.3d at 716.

However, "[a] deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his or her appellate rights; the defendant must show prejudice." ***Touw***, 781 A.2d at 1254 (holding that a claim that counsel failed to consult with a defendant about an appeal "does not fit within the [*per se* ineffectiveness] rule articulated" in ***Lantzy***). "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." ***Id.*** (quoting ***Flores-Ortega***, 528 U.S. at 484).

With respect to the consultation itself, this Court has explained that "[n]either **Flores–Ortega** nor **Touw** explores the adequacy of the consultation required. Nonetheless, it is evident that incorrect advice or failing to properly advise a client can be grounds for an ineffectiveness claim." **Markowitz**, 32 A.3d at 716 (citations omitted). Therefore, "where a petitioner can establish that but for counsel's erroneous advice, he would have filed a direct appeal, he is entitled to the reinstatement of his direct appeal rights." **Id.** at 717.

Here, the PCRA court addressed the circumstances of trial counsel's consultation with Appellant as follows:

> As [trial counsel] credibly testified, his appeal-related conversation with [Appellant] was comprehensive. The trial, [counsel] explained, was relatively clean, which meant the only potentially viable issue he could identify was the legitimacy of the court's omnibus ruling. But the likelihood of a favorable decision from Superior Court, he opined, was less than fifty percent, while the best result he thought they might achieve even if they prevailed was a reversal of only one of [Appellant's] convictions. [Trial counsel] frankly told him, moreover, that an appeal would be costly. Counsel knew that [Appellant's] mother had paid for his defense through sentencing, and they discussed that further financing an appeal would create a financial hardship for her. In consideration of that, [trial counsel] offered that [Appellant] could file the appeal to preserve his rights and then apply for IFP status to get future costs waived. He did not mention the possibility that [Appellant] might be eligible to appeal as a public defender client, however, . . . nor did [Appellant] inquire about it. Before [trial counsel] left the jail on December 16, 2019, he reminded [Appellant] that he only had five days left to file a timely notice of appeal. Having already heard that [Appellant] would "probably not" appeal, moreover, [trial counsel] told his client to contact him if he changed his mind. The attorney did not hear from him after that.

According to [Appellant], the redressable omission here was [trial counsel's] failure to tell him he could appeal at no cost using the public defender's office. Strongly implying that his financial position was the driving force behind his decision not to appeal, he shared with the court his assumption that he had no choice but to proceed with private counsel. The problem, though, is that he neglected to share that information with [trial counsel] in 2018, and the attorney cannot reasonably be said to have anticipated it. He knew money was an issue, which is why he proposed an avenue for reducing the appellate costs [in the form of filing for IFP status.] **He did not know it was a decisive issue, though, because [Appellant] did not tell him. What he did know, however, was that he had delivered an honest assessment of [Appellant's] prospects on appeal and that [Appellant], who never expressed anything along the lines of "I just can't afford it," said he would "probably not" appeal.**

[Trial counsel] did consult with [Appellant] face-to-face at the Jefferson County Jail, which makes the question solely about whether he should have understood from the substance of their conversation that [Appellant] wanted to appeal. The [c]ourt answers that question in the negative.

Given the circumstances known to [trial counsel] at the time, therefore, he had no reasoned basis to imagine that [Appellant] would have appealed but for the expense. What [Appellant] effectively asks this [c]ourt to do, therefore, is impose a new duty on attorneys—one that requires them to advise their clients, regardless of whether their interactions objectively warrant it— that they can proceed with a public defender for purposes of appeal whether or not they had private counsel through sentencing. The court will not do that. A defendant must accept some responsibility for what he reasonably conveys to counsel; he cannot expect the attorney to intuit from silence his most pressing concerns. The court thus declines to find that [trial counsel] was ineffective for failing to provide information that his discussion with [Appellant] did not objectively indicate was pertinent.

PCRA Ct. Order & Op., 4/19/21, at 1-5.

Following our review of the record, we discern no basis to disturb the

PCRA court's conclusion that Appellant is not entitled to relief. *See Miller*,

102 A.3d at 992. As noted previously, the PCRA court credited trial counsel's testimony that he offered to file a notice of appeal to preserve Appellant's rights and noted that Appellant could petition for IFP status. However, Appellant did not indicate that he wanted to file an appeal. ***See*** N.T. PCRA Hr'g, 1/8/21, 9-10; PCRA Ct. Order & Op. at 4; ***see also*** Rule 1925(a) Op. at 1. We are bound by the PCRA court's credibility determinations, which are supported by the record. ***See Lawson***, 90 A.3d at 4; ***see also Commonwealth v. Montalvo***, 205 A.3d 274, 290 (Pa. 2019) (stating "that a PCRA court's credibility findings are to be afforded great deference and where, as here, they are supported by the record, such determinations are binding on an appellate court"). Therefore, trial counsel was not ineffective for failing to file a direct appeal. ***See Markowitz***, 32 A.3d at 715 (stating that counsel "is not required to file an appeal that is not requested").

Further, given Appellant's statements to trial counsel, ***see*** PCRA Ct. Order & Op. at 4; Rule 1925(a) Op. at 1, there is no basis to conclude that, but for trial counsel's alleged failure to adequately consult, Appellant would have filed a direct appeal. ***See Markowitz***, 32 A.3d at 716-717. Therefore, Appellant has failed to establish that trial counsel was ineffective on that basis. ***See id.*** Accordingly, Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/12/2021