J-S10017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARIAN PERSON | |
| Appellant | No. 265 EDA 2018 |

Appeal from the PCRA Order Entered December 18, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0013496-2014

BEFORE: GANTMAN, P.J.E., STABILE, and COLINS,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 19, 2019**

Appellant, Darian Person, appeals from the December 18, 2017 order denying his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. We affirm.

The PCRA court recited the pertinent facts on the record at the PCRA hearing:

> On 9/22, 2014, [Appellant] was with a group of individuals, including [Q.D.], [S.M.], [R.F.], and [A.T.], that this group was looking for another group of young people, who had been in an altercation with some of their friends a few days prior, that this group was walking around, that they came into contact with another group of teenagers and that they began fighting, that that fight was broken up by the SEPTA police, that, thereafter, the fight sparked up again as the other group followed [Appellant] and his group from the area.

---

[*] Retired Senior Judge assigned to the Superior Court.

At the point in which the fight started up again, [Q.G.] yelled to [Appellant] get the gat, get the gat and at that point, [Appellant] took a .22 caliber weapon from the backpack of one of the others and fired four or five shots into the crowd of individuals that were fighting. [D.B.] was struck twice and survived, [A.A-B.], a fifteen-year-old bystander, was struck in the left side of the back and was killed. At least five witnesses identified [Appellant] as the shooter. All were his friends who had been there with him except a woman, who attempted to grab [Appellant] after the shooting, and identified him in a photo array.

N.T. Hearing, 12/18/17, at 114-16.

On December 2, 2015, Appellant entered a negotiated guilty plea to third degree murder, aggravated assault, and conspiracy. The Commonwealth reduced the murder charge from first to third degree in exchange for the plea. The trial court imposed an aggregate 25 to 50 years of incarceration, and Appellant did not file a direct appeal. On September 8, 2016, Appellant filed this timely first PCRA petition seeking, among other things, reinstatement of the right to file a direct appeal. The PCRA court conducted a hearing on December 18, 2017. The PCRA court found, among other things, that Appellant received a favorable plea bargain and that he never asked plea counsel to file a direct appeal on his behalf. The PCRA court therefore denied relief. This timely appeal followed.

Appellant raises a single issue for our review:

Was the PCRA court correct in denying reinstatement of [Appellant's] rights *nunc pro tunc* when, after an evidentiary hearing, the court credited trial counsel's testimony that [Appellant] never communicated to counsel his interest in appealing after entering his negotiated guilty plea?

- 2 -

Appellant's Brief at 1.[1]

On review, we must determine whether the PCRA court's findings are supported by the record and free of legal error. *Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009). Appellant claims counsel was ineffective for failing to file a requested appeal and/or failing to consult Appellant about the possibility of an appeal. To overcome the presumption of counsel's effectiveness, a PCRA petitioner must plead and prove that the underlying issue has arguable merit; that counsel had no reasonable strategic basis for the disputed action or inaction; and that the result of the proceeding would have been different but for counsel's error. *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012).

"[W]hen a lawyer fails to file a direct appeal requested by the defendant, the defendant is automatically entitled to reinstatement of his direct appeal rights." *Commonwealth v. Markowitz*, 32 A.3d 706, 714 (Pa. Super. 2011), *appeal denied*, 40 A.3d 1235 (Pa. 2012). Instantly, Appellant testified that he requested a direct appeal, and counsel testified that Appellant did not do so. Appellant produced a letter he claims he sent to counsel, but

---

[1] During the proceedings before the PCRA court, counsel filed a petition to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). The PCRA court never ruled on the petition and never permitted counsel to withdraw. At the conclusion of the PCRA hearing, counsel agreed to file a notice of appeal on Appellant's behalf. N.T. Hearing, 12/18/17, at 132-33. Counsel has remained on the case and filed a brief on Appellant's behalf.

there was no evidence the letter was mailed and the PCRA court disbelieved its authenticity. Appellant also claims he asked several family members to contact counsel about filing a direct appeal, but he produced no evidence to support that claim. The PCRA court found counsel credible and Appellant not credible. "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014) (*en banc*), *appeal dismissed*, 140 A.3d 675 (Pa. 2016). For the reasons explained in the PCRA court's April 18, 2018 opinion, we agree that this issue lacks merit.

Next, we consider Appellant's argument that counsel was ineffective for failing to consult with him about filing a direct appeal. The United States Supreme Court has held as follows:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

Instantly, the PCRA court found that Appellant's plea bargain was very favorable, given the overwhelming evidence of his guilt and the high likelihood of a conviction for first-degree murder if Appellant proceeded to trial. And, as we have already explained, the PCRA court credited counsel's testimony that Appellant did not demonstrate interest in taking a direct appeal. For the

reasons explained in the PCRA court's April 18, 2018 opinion, we agree that this issue lacks merit. We direct that a copy of that opinion be filed along with this memorandum.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/19

**FILED**

2018 APR 18 PH 4:08

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

### CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0013496-2014 |
| | | |
| v. | : | 265 EDA 2018 |
| | | |
| DARIAN PERSON | : | |

CP-51-CR-0013496-2014 Comm. v. Person, Darian L
Opinion

**OPINION**

8097649551

Rose Marie DeFino-Nastasi, J.

## PROCEDURAL HISTORY

On December 2, 2015, Petitioner entered into a negotiated guilty plea before this court to murder of the third degree, 18 Pa. C.S. §2502 (c), as a felony of the first degree; conspiracy to commit murder, 18 Pa. C.S. §903, as a felony of the first degree; and aggravated assault, 18 Pa. C.S. §2702 (a)(1), as a felony of the first degree. On that same date Petitioner was sentenced to twenty (20) to forty (40) years imprisonment for third degree murder; five (5) to ten (10) years imprisonment, to run consecutively, for the conspiracy conviction; and five (5) to ten (10) years, to run concurrently, for the aggravated assault conviction.

No post-sentence motion to withdraw the plea was filed. No appeal to the Pennsylvania Superior Court was filed. Therefore, judgment of sentence became final on January 1, 2016.

On September 8, 2016, Petitioner filed the instant, timely PCRA petition.

On November 16, 2016, Petitioner filed an amended petition.

On August 2, 2017, PCRA counsel filed a *Finley* letter of no merit.

On September 21, 2017, the Court rejected PCRA counsel's *Finley* letter and ordered a hearing.

1

On December 18, 2017, a PCRA hearing was held, after which the Court denied PCRA relief.

On January 12, 2018, Petitioner filed the instant appeal to the Pennsylvania Superior Court.

On April 13, 2018, Petitioner filed a 1925(b) Statement of Matters Complained of on Appeal, pursuant to an order of the Court, claiming:

1.   The PCRA court erred in denying Petitioner's requested relief to reinstate appellate rights *nunc pro tunc*.

## FACTS

On September 22, 2014, Petitioner and his friends were in search of a group of teenagers who had engaged in an altercation with their friends a few days before. They encountered the group and a fracas ensued which was broken up by Septa police officers. The group dispersed; however, the confrontation resumed nearby and Petitioner took a .22 caliber firearm from the back-pack of one of his friends and fired four (4) to five (5) shots into the crowd his group was fighting. Bystanders, Donald Boseman and fifteen (15) year-old Aisha-Abdur Rahman, were struck by the gunfire. Donald Boseman was struck two (2) times and survived. Aisha-Abdur Rahman was struck one (1) time on her left side and was killed. Five (5) witnesses identified Petitioner as the shooter (four of which knew him as a friend).

## ANALYSIS

The PCRA Court set out its analysis and findings of fact and law in full, on the record, after the hearing. *See* N.T. 12/18/17 at pp. 114-133 (attached hereto as 'Exhibit A')

Therefore, the PCRA court did not err in denying Petitioner PCRA relief.

2

## CONCLUSION

Based on the foregoing, the Court's denial of the PCRA petition should be affirmed.

By the Court:

Rose Marie DeFino-Nastasi, J.

3

# EXHIBIT

# 'A'

Commonwealth vs. Person

Should Mr. Bowe have filed a motion to withdraw the guilty plea? He had no duty to consult with his client after a full colloquy. You don't then immediately consult with your client. There is no such duty. Oh, by the way, did you change your mind? How many times do you do that? Did you call him later that day? Do you call him every day? Did you change your mind yet? Did you change your mind yet?

No, there is no reason to assume that there was a duty on Mr. Bowe's part to continue to consult with him once the colloquy was over. Everything before the colloquy was done in accordance with the law and, therefore, there wasn't an error but if Mr. Bowe had somehow communicated with Mr. Person and gone ahead and within ten days brought a motion to withdraw the guilty plea before the Court, I submit that there could be no prejudice in the case because the Court would have denied that motion. The Court heard a full

Commonwealth vs. Person

colloquy. There was a written colloquy. Mr. Person is not someone who is struggling under some sort of mental infirmity or incapacity. This was a knowing and intelligent guilty plea.

The standard for granting leave to withdraw the guilty plea after sentence is a very high hurdle and that would not have been met in this case, Your Honor.

So I submit that the Defendant has not shown that he would be entitled to withdraw his guilty plea. He hasn't shown that his attorney did anything wrong or that the colloquy was inadequate and he has not shown that he made a timely request to have a direct appeal to the Superior Court.

THE COURT: Thank you.

The underlying facts of this particular case are, as follows: On 9/22, 2014, petitioner was with a group of individuals, including Quadir Gibson, Shanireh Merriweather, Rahnea Freeman and Andrew Taylor, that this group was

Commonwealth vs. Person

looking for another group of young people, who had been in an altercation with some of their friends a few days prior, that this group was walking around, that they came into contact with another group of teenagers and that they began fighting, that that fight was broken up by the SEPTA police, that, thereafter, the fight sparked up again as the other group followed the Defendant and his group from the area.

At the point in which the fight sparked up again, Quadir Gibson yelled to the Defendant get the gat, get the gat and at that point, the Defendant took a .22 caliber weapon from the backpack of one of the others and fired four or five shots into the crowd of individuals that were fighting. Donald Boseman was struck twice and survived, Aisha Abdur-Rahman, a 15-year-old bystander, was struck in the left side of the back and was killed. At least five witnesses identified the Defendant as the shooter. All were his friends

Commonwealth vs. Person

who had been there with him except a woman, who attempted to grab the Defendant after the shooting, and identified him in a photo array.

The Defendant's claim in this PCRA, which the Court ordered a hearing on, was that Trial Counsel abandoned the Defendant by failing to file an appeal. That was the claim and so that is the claim that was heard by this Court.

Pursuant to Flores-Ortega and Commonwealth versus Touw, the Defendant has a Constitutional right for Counsel to consult with the Defendant about an appeal where Counsel has reason to believe either, one, that a rational Defendant would want to appeal because there are nonfrivolous grounds for appeal or, two, that this particular Defendant reasonably demonstrated to Counsel that he was interested in appealing.

Now there has been lots of testimony here today about this case and about what the Defendant did and did not

Page 117

Commonwealth vs. Person

want to do. The colloquy speaks for itself. This Court advised the Defendant in very clear terms, by the way, about the sentence, that it was 25 to 50 more than one time, I believe.

In particular, on page 24, the Court, on the conspiracy charge, the sentence will be 5 to 10 years to run consecutively, that means it starts when the 20 ends. Making that sentence, total sentence 25 to 50 and the aggravated assault sentence will be 5 to 10 years to run concurrently. So that just starts with the 20 to 40 and runs at the same time. Do you understand that? The Defendant, yes. The Court, the total sentence being 25 to 50 years state incarceration. Do you understand that? The Defendant, yes. The Court, page 25, line 13, the Commonwealth has agreed, in exchange for your plea, not only do they agree to a sentence of 25 to 50 years, but they also agree that they would not proceed, and then the Court says was he charged with first

Page 118

Commonwealth vs. Person

degree murder, as well as murder generally? The District Attorney, yes, Your Honor. Mr. Bowe, yes. The Court, if you were to go to trial and evidence came out during the course of the trial which could tend to prove that the murder was a first degree murder, then I would have to give the jury the law on first degree murder and if they found you guilty of first degree murder, that sentence is life without parole. I cannot change that as a Judge, and it just goes on.

So going back to the issue here, this case was a first degree murder case by all accounts. Mr. Bowe, an Attorney with 40 years experience, hundreds of trials, 50 capital cases, you might find one other attorney in Philadelphia who has done 50 capital cases, one of the top attorneys in the city that you were lucky enough to have been appointed. That is why the Judge didn't remove Mr. Bowe.

The evidence in this case

Page 119

Commonwealth vs. Person

would be overwhelming because the people who witnessed the crime, knew the Defendant. They knew him. They pointed him out.

The deal struck for 25 to 50 years, basically, saved the Defendant from a life imprisonment sentence because there was a high likelihood had he gone trial, which any seasoned attorney would know, that he would be found guilty of first degree murder and even if he weren't found guilty of first degree murder by some stretch, maybe the jury -- I don't know -- ignored the evidence, four to five eyewitnesses who saw him shoot the gun and the fact that he hit a 15 year old and killed her and hit another 19 year old, there are still two shootings here, one is a death and then one is the aggravated assault where someone is shot two times. There is no way you would get a 25 year sentence even if you were found guilty of third degree murder, which is 20 to 40 year maximum, and aggravated assault.

Page 120

Commonwealth vs. Person

The best deal that could have been had by this Defendant was worked out for him by Mr. Bowe. That was a long explanation to go back to the case law, that why would Mr. Bowe believe that a rational Defendant would want to appeal? There were no nonfrivolous grounds for an appeal. There were only frivolous grounds for an appeal in this particular case.

The Defendant received the benefit of the bargain. This was a guilty plea and during the course of the guilty plea, the Defendant was given multiple opportunities to abort the guilty plea and so in the end, once he's spoken to by the attorney maybe two times, by the Judge throughout the course of the guilty plea and given the option by the Judge on more than one occasion during the guilty plea to not go forward with the plea, that, in essence, is the Defendant saying he does not want to appeal.

So any rational attorney would

Commonwealth vs. Person

think that he was satisfied with his deal at the end of the day or -- not exactly satisfied. The Defendant wouldn't have been satisfied with anything and the reason we know that is because of the kinds of complaints he was making, which I will get to later on, and the Court finds that all the letters, by the way, written to the Court by this Defendant were in handwriting. This letter, D-3, is typed. It is dated 1/14/16. It is titled to Mr. Bowe. There is no address on it. There is no indication that this was ever sent out to Mr. Bowe and even if it were, which the Court doesn't believe that this letter ever went to Mr. Bowe, this could have been typed at any particular time, even if it were, 1/14/16 was well beyond the thirty-day deadline that the Defendant had, which he was clearly told about, from 12/2, 2015.

Also, the Court notes that in the Defendant's letter to the Court on

Commonwealth vs. Person

March 21, 2016, the Defendant makes no mention of the fact that he ever wanted to withdraw his plea, that he ever wanted an appeal, that he ever corresponded with Mr. Bowe and Mr. Bowe ignored him.

All the Defendant said is I believed my sentence was 20 to 40, not 25 to 50 and you need to fix this. Actually, quote, I am asking that upon receiving this letter, that this issue be resolved the way possible and as soon as possible, please, end quote.

So this Defendant did not reasonably demonstrate to Counsel that he was interested in appealing.

Therefore, Trial Counsel did not abandon petitioner by failing to file an appeal.

The second claim by the Defendant that he was induced by Counsel to plead guilty, because Counsel failed to investigate and prepare his defense. The Defendant must show that his plea was unlawfully induced and that he is innocent. The plea must be involuntary

Commonwealth vs. Person

or unknowing. We went through on the record, the Defendant did indicate at various points during this plea that he was not satisfied with the advice of Counsel. He then spoke to Counsel.

The Court then asked him if he wished to continue with the plea. The Defendant indicated that he did. The Court explained to the Defendant that he can go to trial, that the Court was ready for trial, that the trial was going to start on Monday. So obviously it sounds like the plea was the week before maybe or the Friday of the week before.

The Defendant's complaint was that Mr. Bowe did not come up with some kind of defense. The Court tells the Defendant, again, that he has the right to go to trial but that the Court will not remove Counsel because he is an excellent attorney. The Defendant talks to the attorney off the record and then says he is satisfied. The Court, again, says to the Defendant that the Court

Commonwealth vs. Person

will not take the plea unless he wants to go forward with the plea. In response, the Defendant says that he wants to proceed.

After the plea, the Defendant exercised his right of allocution and said, quote, to the family of the decedent, I would like to say that I truly apologize for taking Aisha's life, that my intention was never to hurt Aisha in any kind of way. I made a very poor decision and I will be held accountable for my actions, end quote.

The Defendant claims he was forced to plead guilty because Counsel did not investigate his case and that had Counsel investigated his case, he would have come up with a defense.

The Defendant mentions today in his testimony that he wanted certain motions filed. Those motions, the Court asked him about, were, one, a motion to suppress statements by other witnesses. There was no such thing and I understand the Defendant doesn't know the law.

51CR00134962014
Darian Person

Hearing Volume 1
December 18, 2017

Page 125

Page 126

Commonwealth vs. Person

Two, motion to sever, that would not have been granted in this case anyway just from the Court knowing the facts but, secondly, that would not have an issue. It was a non-issue. The codefendant was sent back to juvenile court.

The other claims that the Defendant makes are that Miss Merriweather stated that part of her statement was made up by the police. Another witness denied her statement in its entirety. A witness failed to pick petitioner out in a lineup, that Counsel failed to investigate the inconsistent statements of Deborah Scott and that Counsel failed to subpoena phone records of the codefendant who claimed he had phone contact with the Defendant prior to commission of the crime. which was not true.

These were all impeachment, basically, evidence, which would be the type of evidence that would come out during a trial, which Mr. Bowe testified

---

Commonwealth vs. Person

he was prepared for, which this Court credits that testimony that Mr. Bowe was prepared for and prepared to do a trial.

Sometimes there is no affirmative defense, that is just the way it is and although the Defendant may be unhappy with the situation he is placed in, that four or five eyewitnesses can directly testify that they saw him commit the murder and that the District Attorney's Office, knowing that he killed one person and shot another, would not go below 25 years, but that is the reality of the situation.

So, with regard to prejudice, to succeed in showing prejudice, the Defendant must show that it is reasonably probable that, but for Counsel's errors, he would not have pleaded guilty and would have gone to trial. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

In order to satisfy this

---

Commonwealth vs. Person

prejudice requirement, the Defendant must show that there is a reasonable probability that, but for Counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

When you look at this inquiry, basically, the Court is reviewing, it's almost as if it is an ineffective assistance challenge. Where the alleged error of Counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the Defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that the Discovery of the evidence would have led Counsel to change his recommendation as to the plea.

This assessment, in turn, will depend, in large part, on a prediction, whether the evidence likely would have changed the outcome of a trial.

Similarly, where the alleged error of

---

Commonwealth vs. Person

Counsel is a failure to advise the Defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

There was no affirmative defense in this particular case. You have four to five eyewitnesses. They saw you there. So you didn't have alibi. You didn't have self-defense because the other side, there is no claim that anybody was armed and coming after you at the time you pulled out a gun and shot two people.

So the only thing would be that Counsel would try to have impeached all of the witnesses against you. It is really, really hard to impeach four witnesses, who know you and identify you as being with them and on the scene, shooting a gun. So there is no information that this Defendant had brought out that Counsel failed to

Commonwealth vs. Person

investigate that would have led to this Defendant choosing not to plead guilty.

In the end, that is why this Defendant did plead guilty because the reality of the situation was that this lawyer's advice was solid and good advice and that had the Defendant gone to trial, he most likely would be serving a life sentence right now.

There is another claim outstanding. So, therefore, this Court finds that as to the second claim, that Counsel induced the Defendant to plead guilty, that claim has no merit. I am not even going to get to the prejudice part. It doesn't even have merit to start off with.

Lastly, the Defendant raised the claim of newly discovered evidence in his petition. There was no hearing on that but it needs to be decided on the record.

The Defendant claims that the codefendant recanted his statement on a prison call on 10/2/16, that the

Commonwealth vs. Person

codefendant called the petitioner on a recorded prison call and stated that he falsely implicated the petitioner.

For this evidence to qualify as newly discovered evidence, it would have to be discovered after trial, could not have been discovered earlier through reasonable diligence. The Defendant would have that one. Assuming it is even true, we don't even have it in here in front of us, but it is a recantation by a codefendant; is not cumulative -- it's cumulative but it is by the codefendant, so even if the Defendant could get passed that, it is not being used solely to impeach credibility, which it would be, and would likely compel a different result, which it absolutely would not in this particular case because there are four identification witnesses who know the Defendant who place him at the scene. Furthermore, recantations are notoriously unreliable, especially those by friends, especially one by a

Commonwealth vs. Person

codefendant who was sent back to juvenile court and at the age of 21 is going to be out and no longer subject to any kind of jurisdiction of the Court, so who would lose nothing by recanting his statement. So, therefore, that issue has no merit.

This Court, finding that the Defendant's issues have no merit, denies the PCRA and formally dismisses it at this time.

You have thirty days to file an appeal to the Superior Court regarding this dismissal and denial of your PCRA.

Do you understand that?

THE DEFENDANT: No.

THE COURT: You don't understand that?

THE DEFENDANT: No.

THE COURT: I just denied your PCRA, so you can file an appeal on my denial. That appeal has to be filed with the Superior Court.

Do you understand that?

Commonwealth vs. Person

THE DEFENDANT: Yes.

THE COURT: I denied it here. So you have to go to the higher Court to say she is wrong, that Court shouldn't have denied it.

Are you going to continue to represent him?

MR. SCHULTZ: Your Honor, respectfully, I spoke to Mr. Person this morning. I explained to him the scenario which could happen today and if Your Honor would like, obviously I did file a Finley letter but Your Honor has not granted my motion to withdraw. In speaking to Mr. Person, he does wish to pursue an appeal in this case.

THE COURT: That's fine. You understand the issues, Counsel. If you feel you can't do it, that's fine, but you did represent him to the best of your ability here and you know the issues.

MR. SCHULTZ: I spoke with Mr. Person and he asked me to continue, if I can. If Your Honor would allow, I will

Commonwealth vs. Person

file a notice of appeal.

THE COURT: I think that that is fine. since you sat through this hearing, you know what the issues are, you zealously represent him.

MR. SCHULTZ: I am familiar with the case, as well, Your Honor.

THE COURT: That's fine. Your Counsel will file an appeal on your behalf.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right.

MS. LABAR: Thank you, Your Honor.

May I be excused?

THE COURT: Yes.

MR. SCHULTZ: May I be excused, Your Honor?

THE COURT: Yes.

Thank you.

MR. SCHULTZ: Thank you, Your Honor.

---

(Whereupon, the

Commonwealth vs. Person

proceedings were adjourned, at this time.)

---

Commonwealth vs. Person

INDEX

---

DEFENSE EVIDENCE

| WITNESS: | Dr | Cr | Red | Rec |
|---|---|---|---|---|
| WILLIAM BOWE, ESQ. | 7 | 25 | 31 | |
| RONALD FELDER | 42 | 48 | 53 | |
| DARIAN PERSON | 54 | 64 | 93 | |

**Commonwealth v. Darian Person**
CP-51-CR-0013496-2014
Opinion

## Proof of Service

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Petitioner:  Mr. Darian Person, MG 8776
SCI Fayette
P.O. Box 9999
LaBelle, PA 15450-1050

Type of Service:  ( ) Personal  ( ) First Class Mail  (x) Other, Please Specify: Certified

Counsel:  Joseph Schultz, Esquire
1518 Walnut Street, Suite 808
Philadelphia, PA 19102

Type of Service:  ( ) Personal  (x) First Class Mail  ( ) Other, Please Specify:

District Attorney:  Philadelphia District Attorney's Office
PCRA Unit
Widener Bldg.
3 South Penn Square
Philadelphia, PA 19107

Type of Service:  ( ) Personal  ( ) First Class Mail  (x) Inter-Office

Date: 04/18/2018

Michael G. Zaleski
Law Clerk to the Honorable Rose Marie DeFino-Nastasi