J-S07022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL CRUMP | : | |
| | : | |
| Appellant | : | No. 3180 EDA 2018 |

Appeal from the PCRA Order Entered September 28, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011569-2013

BEFORE: NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.: **FILED MARCH 04, 2020**

Appellant, Michael Crump, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In its opinion, the PCRA court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. Procedurally, we add that the court ordered Appellant on October 30, 2018, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant complied on November 20, 2018.

Appellant raises the following issues for our review:

DID THE PCRA COURT ERR IN DISMISSING [APPELLANT'S

_____

[*] Retired Senior Judge assigned to the Superior Court.

PETITION] BECAUSE THE EVIDENCE ADDUCED BY APPELLANT IN THE FORM OF TESTIMONY AT THE OCTOBER 20, 2017 HEARING AND DOCUMENTS ADMITTED, ESTABLISHED BY A PREPONDERANCE THAT FORMER DEFENSE COUNSEL WAS *PER SE* INEFFECTIVE WHEN APPELLANT ASKED FORMER DEFENSE COUNSEL TO FILE A DIRECT APPEAL TO CHALLENGE THE DISCRETIONARY ASPECTS OF HIS SENTENCE AND DESPITE THIS REQUEST, FORMER DEFENSE COUNSEL FAILED TO DO SO? …

DID THE PCRA COURT ERR IN DISMISSING [APPELLANT'S PETITION] BECAUSE THE PREPONDERANCE OF THE EVIDENCE ESTABLISHED THAT FORMER DEFENSE COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO CONSULT WITH APPELLANT ABOUT FILING AN APPEAL EVEN THOUGH APPELLANT REASONABLY DEMONSTRATED HIS INTEREST IN APPEALING AND THAT APPELLANT WOULD HAVE TIMELY APPEALED IF DEFENSE COUNSEL HAD CONSULTED WITH HIM? …

DID THE PCRA COURT ERR IN DISMISSING [APPELLANT'S PETITION] BECAUSE THE EVIDENCE ADDUCED DURING THE PCRA PROCEEDINGS, INCLUDING THE HEARING ON OCTOBER 20, 2017 AND DOCUMENTS SUBMITTED AS EXHIBITS, DEMONSTRATED BY A PREPONDERANCE THAT APPELLANT ASKED FORMER DEFENSE COUNSEL WHILE SEATED AT COUNSEL TABLE AFTER SENTENCING TO FILE AN APPEAL IN ORDER TO CHALLENGE THE DISCRETIONARY ASPECTS OF HIS SENTENCE AND THAT DESPITE THIS REQUEST, DEFENSE COUNSEL DID NOT FILE A TIMELY POST-SENTENCE MOTION IN ORDER TO PRESERVE THIS CLAIM FOR APPEAL AND, IN THE ALTERNATIVE, THE EVIDENCE SHOWED THAT DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO CONSULT WITH APPELLANT ABOUT FILING A POST-SENTENCE MOTION IN ORDER TO PRESERVE A DISCRETIONARY SENTENCE CHALLENGE FOR APPEAL?

(Appellant's Brief at 4-6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Timika R. Lane,

we conclude Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (*See* PCRA Court Opinion, filed May 30, 2019, at 9-19) (finding: **(1)** court did not credit Appellant's testimony that he asked counsel to file notice of appeal at sentencing hearing; counsel reasonably interpreted letter Appellant sent during appeal period as request for counsel to file untimely post-sentence motion for reconsideration of sentence; **(2)** Appellant did not demonstrate that counsel had duty to consult with him regarding appeal; at sentencing hearing, counsel informed Appellant that he needed to notify Public Defender's office if he wanted to appeal; Appellant failed to contact counsel in timely manner; Appellant also failed to show that he would have appealed any non-frivolous issue; **(3)** Appellant did not make timely request for filing of post-sentence motion; moreover, Appellant suffered no prejudice as result of counsel's inaction). The record supports the PCRA court's decision. Accordingly, we affirm based on the PCRA court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/20

IN THE COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA     :

    :         CP-51-CR-0011569-2013

v.    :

    :         3180 EDA 2018

MICHAEL CRUMP     :

CP-51-CR-0011569-2013 Comm. v. Crump, Michael
Opinion

**OPINION**

8275964731

**LANE, J.**                                           **May 30, 2019**

The present appeal arises from this court's dismissal of a Post-Conviction Relief Act ("PCRA") petition for Michael Crump ("Appellant"). This court respectfully requests that its decision be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

### I. Guilty Plea

On August 24, 2015, Appellant entered an open guilty plea for the charge of Aggravated Assault (18 Pa.C.S.A. § 2702(A), a first-degree felony).[1] Appellant pled guilty to the following facts:

> [O]n August 29, 2013, at about 2:15 in the morning, [Appellant] was in the home with Christina Miranda, the complaining witness. She's present here in court today. She knows [Appellant] because she has a child with [Appellant]'s brother, so this [Appellant] is uncle to her child. The complainant and [Appellant] got into an

---

[1] Although it was an open guilty plea, in exchange for the plea, the Commonwealth dropped Appellant's seven remaining charges, agreed not to seek a mandatory sentence (despite this being Appellant's second strike), and agreed to an offense gravity score of ten. This was reflected on Appellant's written plea colloquy. The Commonwealth also agreed to treat Appellant's REVOC prior record score as a RFEL.

*Commonwealth v. Crump*                                                                1

argument, Your Honor, at which time [Appellant] placed his hands around her throat and began to choke her, telling her he was going to kill her. Ms. Miranda would further testify that he continued to choke her with his hands, dug his nails into her neck, threw her against a closet, and banged her head against that closet door numerous times. Your Honor, the complainant suffered injuries to her neck, chest, chin, right arm, and right knee. The incident stopped because the complainant's son, who was 3 years old at the time, woke up and came into the room, at which point she was able to get up and get her son and text her aunt, Ms. Lisa Rodriguez, who is here today as well. At that point in time, the complainant's aunt was able to call 911 for her. Officers responded to the scene. [Appellant] then fled the location, the location being 5016 Wayne Avenue here in the City and County of Philadelphia. Officers were able to apprehend him approximately seven houses down. Your Honor, had this case also gone to trial before the Court, you would have heard and seen the photographs of the injuries, heard from the officers, and also heard prison calls from [Appellant] relating to the injuries caused to the complainant. This is just a brief summary. I would state for the record, Your Honor, that all of the witnesses are present here in court today, including the complainant's aunt who would be, I suppose, a prompt complaint witness. She did travel down from Lehigh County.

N.T. 8/24/2015 at 8-9.

## II. Sentencing

Appellant's sentencing was on October 26, 2015. On that date, the court considered the presentence investigation, all relevant reports, the sentencing guidelines, the attorneys' arguments and recommendations, Appellant's prison calls, and Appellant's statement to the court. N.T. 10/25/19 at 25.

The court considered that the thirty-eight-year-old Appellant had a lengthy criminal history spanning his entire life from the time he was a juvenile and that a "majority of his convictions are for violent offenses." Presentence-Psychiatric Report for Michael Crump at 3; Michael Crump Criminal History. This was Appellant's second strike (though the Commonwealth waived his mandatory minimum sentence of ten years). N.T. 10/25/19 at 7. When Appellant was previously imprisoned, he accumulated twenty misconducts (seven of which were dismissed). N.T. 10/25/19

at 20-21. The Commonwealth agreed for the purposes of sentencing that his prior gravity score was Repeat Felon (RFEL), and that his offense gravity score was a ten. *Id.* at 11.

The court also considered Appellant's statements in prison calls leading up to the trial, which showed a shocking lack of remorse. On August 30, 2013, he stated, "I wasn't in the wrong" and "All I did was choke, all I did was choke, I mean choke her out and threw her in the closet door a couple times, real shit." N.T. 10/26/15 at 18; Commonwealth's Sentencing Memorandum at 2-3. On September 2, 2013, he stated, "The bitch crazy, caught the bitch in my shit . . . choked her the fuck out, she got fucked up." N.T. 10/26/15 at 18; Com.'s Sentencing Mem. at 3. On September 4, 2013, he stated, "[Y]eah, I'm cool with the assault. That's what the fuck it was. I balled her the fuck up." N.T. 10/26/15 at 18; Com.'s Sentencing Mem. at 3. He then told an associate to intimidate the victim: "But um, try to get a message to her and tell her to take this dollar man . . . she can't even pay no fucking rent where she at, she'll definitely jump on that. . . . You know what I'm talking about." N.T. 10/26/15 at 18; Com.'s Sentencing Mem. at 3. On September 5, 2013, he stated, "I ain't even do that shit, like, I definitely put my hands on her. We ain't even going to play no games." Com.'s Sentencing Mem. at 4. Finally, on September 15, 2013, he stated, "[Y]ou dumb bitch . . . Like what the fuck is wrong with you? Here you go, my fault, like I said after I choked you the fuck out." *Id.*

The court considered Appellant's presentence report, in which his presentence investigator labelled Appellant as "attempting to be manipulative" and stated that he "did not appear to feel any trepidation over his current standing with the Court or about the crime he committed and seemed to have a sense of entitlement. He blamed his current standing with the Court on the victim in the matter." Presentence-Psychiatric Rep. for Michael Crump at 3; N.T. 10/26/15 at 19. He then

stated, "Look, there was a fight and somebody lost, she's just bitter" Presentence-Psychiatric Rep. for Michael Crump at 3; N.T. 10/26/15 at 20.

The court considered the Commonwealth's explanation of why it recommended an aggravated sentence that was higher than its usual recommendation of eight to twenty years. N.T. 10/26/15 at 17, 22. The Commonwealth noted that the Appellant ran from the police, tried to bribe the victim, and now showed a "complete and utter lack of remorse." *Id.* at 18. The Commonwealth noted that, two years after the incident, the victim in the case "still struggles with much fear and anxiety and sleeplessness." *Id.* at 21. The Commonwealth stated that it agreed to the lower offense gravity score and prior record score in order to bring her closure. *Id.* at 21. The Commonwealth's report noted that it was "extremely fortuitous" that the victim even survived the encounter. Com.'s Sentencing Mem. at 2. It also stated that the victim's son, who witnessed the crime and is now five, "is afraid to leave her side, fearful that [someone] will try and hurt her. " *Id.*; N.T. 10/26/15 at 21-22.

The court also considered several mitigating factors. Appellant's attorney stated that he "wanted to change his life around" and that he had a son that he wanted to go home to one day. N.T. 10/26/15 at 13, 15. Appellant told his presentence investigator that when he was a child, his father was physically abusive. Presentence-Psychiatric Rep. for Michael Crump at 1. Additionally, Appellant was previously diagnosed in prison with Dysthymic disorder, although this diagnosis was described by the supervisor of the prison's behavioral health unit as "mild," "not serious," and possibly "due to heavy cannabis dependency." *Id.* at 2.

The court also heard directly from Appellant, who characterized the crime as a "little fight" and expressed his doubt that the victim was actually traumatized. N.T. 10/26/15 at 23-24.

The court stated on the record that it was disturbed by the injuries it saw in pictures of the victim and determined that Appellant's behavior was very troubling in that he exhibited a complete lack of remorse. N.T. 10/26/15 at 24-25. The court sentenced Appellant to nine to twenty years of state incarceration and ordered him to take anger management and get help for his mental health issues; this sentence was both appropriate and within the statutory range. *Id.* at 26. Appellant's attorney advised Appellant on the record, told him how long he had to file a post-sentence motion or appeal, and informed him that he would have to reach out to the public defender's office in order to do those things. *Id.* at 26-27.

On November 18, 2015, Appellant filed an untimely motion to reconsider his sentence, and on November 23, that motion was denied.

### III. PCRA

Appellant filed the PCRA petition that is the subject of the present appeal on March 30, 2016, and an amended PCRA petition on May 12, 2017. The PCRA petition alleged that Appellant's trial counsel was ineffective in failing to file or consult with him regarding a direct appeal. This court, which also presided over Appellant's guilty plea and sentencing, held an evidentiary hearing for the PCRA petition on October 20, 2017.[2]

At the evidentiary hearing, Appellant testified that, during his sentencing hearing, he asked his attorney for an appeal, but she did not respond. N.T. 10/20/17 at 33. He also testified that this verbal request was made in court, during the proceedings, and at the same audible volume as his court testimony. *Id.* at 10.

However, this alleged request was not reflected in the notes of testimony from sentencing, which the Commonwealth exhibited at the hearing. N.T. 10/26/15 at 27. Those sentencing notes

---

[2] As Appellant's trial counsel moved to a new jurisdiction and was unavailable, Appellant was the only testifying witness at this hearing. N.T. 10/20/17 at 45.

*Commonwealth v. Crump*
5

also reflect that when asked if he understood that he had to contact the public defenders' office to file a post-sentence motion or appeal, Appellant replied, "Yeah, I understand." *Id.* When asked if he had any questions about his sentence, Appellant did respond "Damn, why so much?" but he did not request to change his sentence, as Appellant now claims. *Id.* The court did not find Appellant's testimony on this matter to be credible.

Although Appellant stated at the PCRA hearing that he was not aware that his sentence could be more than six years, his signed guilty plea colloquy stated that he faced twenty years in prison. N.T. 10/20/17 at 7, 23. During the guilty plea proceedings, the court asked him if he and his attorney had discussed the colloquy form and his maximum possible sentence of twenty years: Appellant replied that he did and he was satisfied with his attorney's representation. N.T. 8/24/15 at 6, 7. Additionally, at the sentencing hearing, his counsel stated on the record that she discussed Appellant's potential sentence of twenty years with him, as well as the fact that if he withdrew his guilty plea and took the case to trial, he would face eight charges, around sixty-six years of prison, mandatory minimums, and a potential lifetime of Megan's Law registration. N.T. 10/26/15 at 7-8.

Twenty-three days after sentencing, on November 18, after the period for filing a post-sentence motion had passed, Appellant's counsel received a letter from Appellant which included the line "I need for you to file for a time reduction for me." N.T. 10/20/17 at 14, 34; Ex. P-2. It did not mention any conversation Appellant had with counsel in court. N.T. 10/20/17 at 33. The top of the letter read October 28, 2015 (two days after sentencing), but the letter was postmarked November 16. Ex. P-2. Appellant stated during the PCRA hearing that he wrote his letter from Curran-Fromhold Correctional Facility, where he resided for around two days after sentencing. N.T. 10/20/17 at 13. However, his letter opens with the statement that he was located at State Correctional Institution Graterford. *Id.;* Ex. P-2. When Appellant testified, he explained that this

discrepancy was because he did not complete the final draft of the letter, or send it, until after he had been moved from Curran-Fromhold to Graterford. N.T. 10/20/17 at 13, 32, 34.

Upon receiving Appellant's untimely letter, counsel immediately filed an untimely post-sentence motion that same day, asking for a reduced sentence. N.T. 10/20/17 at 34; Ex. P-3. The next day, counsel sent Appellant a letter stating "I believe you mean you would like us to file a motion to reconsider the sentence." Ex. P-4. Appellant never responded or clarified what he meant by his "time reduction" statement, but a post-sentence motion was the only reasonable interpretation of the statement. As Appellant's appellate options were limited by the fact that he pled guilty and his discretionary sentence appeal was waived by a lack of preservation, Appellant did not have any non-frivolous issues to appeal. Counsel included reference to this in its letter, noting that "since the filing of this motion is not timely, there is no sentencing claim preserved for an appeal." Ex. P-4.

Counsel later wrote again to Appellant, explaining that the court denied his post-sentence motion. Ex. P-5; N.T. 10/20/17 at 35. In response, Appellant sent her an untimely, unexplained, and unfiled pro se notice of appeal. Ex. P-3. The Chief of the Appeals Division at the Philadelphia Public Defenders Association responded to Appellant, informing him that the notice of appeal was never docketed, and "since it was both dated and sent after the time for filing a notice of appeal had passed, it will not result in an appeal being heard by the Pennsylvania appellate courts." Ex. P-7; N.T. 10/20/17 at 35. Two months later, Appellant filed the present PCRA petition.

After hearing all of the above evidence at the PCRA evidentiary hearing, the court allowed Appellant and the Commonwealth to file additional responses on December 15, 2017 and July 18, 2018, respectively. On September 28, 2018, the court dismissed the PCRA petition, concluding

that Appellant's counsel could not be faulted for not filing a frivolous appeal or a motion that was not timely requested by Appellant.

## IV. Appeal

Appellant filed the present appeal on October 26, 2018. In his statement of matters concerned, Appellant asserts the following:

1. The PCRA Court erred in dismissing Claim # 1, because the evidence adduced by Appellant in the form of testimony at the October 20, 2017 hearing and documents submitted, established by a preponderance that former defense counsel was *per se* ineffective when Appellant asked former defense counsel to file a direct appeal to challenge the discretionary aspects of his sentence and despite this request, former defense counsel failed to do so. In particular, the evidence shows that Appellant expressed surprise and disappointment in the length of his sentence in an outburst in the courtroom as soon as the sentence was pronounced by the Court; Appellant asked defense counsel to file a direct appeal while he and counsel were still seated at counsel table at the conclusion of the sentencing hearing; Appellant wrote to defense counsel two days after sentencing to ask again that an appeal be filed regarding the length of his sentence; and that defense counsel received Appellant's letter within the time period for filing an appeal, yet instead of filing an appeal, defense counsel filed an untimely post- sentence motion for reconsideration.

2. The PCRA Court erred in dismissing Claim # 2, because the preponderance of the evidence established that former defense counsel was ineffective when she failed to consult with Appellant about filing an appeal even though Appellant reasonably demonstrated his interest in appealing and that Appellant would have timely appealed if defense counsel had consulted with him. In particular, the evidence establishes that Appellant expressed surprise and disappointment in the length of his sentence when the sentence was imposed; that Appellant asked defense counsel to file an appeal while seated at counsel table at the conclusion of the sentencing hearing; that Appellant wrote to defense counsel two days after the sentencing hearing to ask again for an appeal to be filed regarding his sentence; that defense counsel received Appellant's letter within the appeal period yet did not follow up with him or consult with him regarding the advantages and disadvantages of filing an appeal and instead filed an untimely post-sentence motion for reconsideration of sentence; and that defense counsel did not write to, call, or visit Appellant during the 30-day time period for filing an appeal in order to discuss appeal options with him. Further, Appellant testified that he would have filed a timely appeal if former defense counsel had consulted with him; indeed, he attempted to appeal after he learned that counsel had not, but his attempt was late.

3. The PCRA Court erred in dismissing Claim # 5, because the evidence adduced during the PCRA proceedings, including the hearing on October 20, 2017 and

documents submitted as exhibits, demonstrated by a preponderance that Appellant asked former defense counsel while seated at counsel table after sentencing to file an appeal in order to challenge the discretionary aspects of his sentence and that despite this request, defense counsel did not file a timely post-sentence motion in order to preserve this claim for appeal. The evidence also showed that defense counsel was ineffective for failing to consult with Appellant about filing a post-sentence motion in order to preserve a discretionary sentence challenge for appeal.

## DISCUSSION

The proper standard for appellate PCRA review is well-established:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party . . . . To be entitled to PCRA relief, a petitioner bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2) [including ineffective counsel].

*Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citations omitted). The court "grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Nelson*, 574 A.2d 1107, 1110 (Pa. Super. 1990), *quoted in Commonwealth v. Touw*, 781 A.2d 1250 (Pa. Super. 2001).

An ineffective counsel PCRA claim warrants relief if the counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii); *see, e.g., Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). Counsel is strongly presumed to be effective, and it is the defendant's burden to overcome this presumption. *Commonwealth v. Ligons*, 971 A.2d 1125, 1137 (Pa. 2009). To succeed with an ineffective counsel claim, a defendant must prove each of the following elements: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's

ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011). In the present case, Appellant failed to prove that his counsel acted ineffectively.

## I. Appellant's counsel was not ineffective when it did not file an appeal or continue to consult with Appellant regarding an appeal.

Appellant is mistaken in arguing that his counsel was ineffective for failing to file or consult with Appellant regarding an appeal. When an appellant challenges the effectiveness of his counsel in this way, he must establish either that he asked his counsel to file an appeal, or that there was a duty to consult. Appellant did not establish either, and as a result, this court properly dismissed his PCRA petition.

### A. Appellant did not request an appeal.

"[B]efore a court will find ineffectiveness of counsel for failing to file a direct appeal, the petitioner must prove that he requested a direct appeal and the counsel disregarded the request." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011) (finding no duty to file an appeal or consult about one where the defendant did not ask for an appeal and the defendant's only potential claim was lacking in merit). If a defendant proves that he directly asked his counsel to file an appeal and his counsel failed to do so, the defendant has shown ineffective assistance of counsel *per se*. *Commonwealth v. Bath*, 907 A.2d 619, 622 (Pa. Super. 2006). However, if the defendant fails to show that he requested an appeal, his counsel "cannot be faulted" for failing to file an unrequested appeal. *Id.* In the case at bar, after an evidentiary hearing, the court found that Appellant never requested an appeal and as a result, his counsel was not ineffective for not filing one.

In the case at bar, Appellant's counsel was very clear with Appellant at sentencing about what he had to do if he wished to file an appeal and how long he had to do so. After Appellant was sentenced, counsel advised him on the record:

*Commonwealth v. Crump* 10

[Counsel:] So [Appellant], you plead guilty and you've been sentenced today by the Honorable Judge Lane. Your sentence on the aggravated assault charge is 9 to 20-years of state incarceration. You will be getting credit for the time you've already served. You have 10 days to ask Her Honor to reconsider the sentence that she imposed. And you have 30 days from today's date if you wish to exercise any of your appellate rights. All of those rights are limited because it was a guilty plea and you were sentenced. *If you want to exercise either one of those rights, you have to contact our office* in [sic] and we will do that for you. Do you understand that?

[Appellant:] Yeah, I understand.

N.T. 10/26/15 at 26-27 (emphasis added). Appellant therefore knew and understood that he was responsible for timely contacting the public defender's office if he wanted to exercise his right to a post-sentence motion or an appeal. The fact that Appellant did not contact his counsel within the proper time for preserving his claim is not the fault of his counsel.

Appellant claimed that he asked his attorney for an appeal at his sentencing hearing and that his attorney ignored his request: however, the court did not find this claim credible. N.T. 10/20/17 at 33. Despite Appellant's assertion that he made the request during proceedings at the same volume he used to testify, the request was not in the hearing's notes of testimony. N.T. 10/26/15 at 27.

Although Appellant did eventually send his attorney a letter requesting a "time reduction" before his appeals period was over, his attorney was perfectly reasonable in interpreting this to mean an untimely request for a motion for reconsideration of his sentence, rather than an appeal. N.T. 10/20/17 at 33. After all, if his attorney had filed an appeal rather than a motion to reconsider, it would have been dismissed. Appellant waived almost all of his appellate options by pleading guilty. Appellant does not argue that his sentence was illegal or outside of the statutory maximum. His one remaining avenue for an appeal (which Appellant admitted was the only thing he would have considered appealing) was his discretionary sentence. N.T. 10/20/17 at 14. However, that too was waived, for Appellant failed to preserve these claims by objecting at sentencing or filing a

timely motion for reconsideration. *See Commonwealth v. Griffin*, 65 A.3d 932 (Pa. Super. 2013) ("Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed."); *see also Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003) ("[I]ssues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived."). Counsel included reference to this waiver when she informed Appellant by letter that "since the filing of [his post-sentence motion] is not timely, there is no sentencing claim preserved for an appeal." Ex. P-4. Upon receiving this letter, Appellant neither contested nor attempted to clarify his counsel's reasonable interpretation of his request. N.T. 10/20/17 at 15, 38. Appellant therefore failed to show the PCRA court that he timely requested an appeal.

### B. Appellant was not owed a duty to consult regarding an appeal.

Counsel was not ineffective for not consulting with Appellant about an appeal, because Appellant was not owed a duty to consult. When a defendant fails to demonstrate to counsel that he wished to appeal, in order to prove that there was a duty to consult, he must show that a rational defendant in his case would have wanted to appeal (for example, he must show that there were non-frivolous grounds for appeal). *Commonwealth v. Bath*, 907 A.2d 619, 623 (Pa. Super. 2006) (holding that the defendant failed to prove a duty to consult regarding an appeal to the Pennsylvania Supreme Court when he did not demonstrate any non-frivolous, non-waived issues) (citing *Commonwealth v. Touw*, 781 A.2d 1250, 1254 (Pa. Super. 2001) (remanding for further investigation on counsel's duty to consult regarding an appeal when both the counsel at issue and the Commonwealth agreed that the sentencing court legally erred in misapplying the sentencing guidelines)). Factors that should be considered in determining whether the defendant had non-

frivolous issues to appeal include whether the defendant has limited his appealable issues by pleading guilty. *Commonwealth v. Markowitz*, 32 A.3d 706, 716 (Pa. Super. 2011).

In order to successfully prove his claim, a defendant must also demonstrate prejudice by showing that he would have appealed had there been a consultation with counsel. *Touw*, 781 A.2d at 1254-55. In determining whether a defendant has proven this additional factor, a PCRA court must balance a defendant's assertion that he would appeal with, for example, the fact that he "made no effort to contact counsel during the appeal period." *Id.*

Here, Appellant did not successfully prove that his counsel had a duty to consult him regarding an appeal. As demonstrated in section I (A), *supra*, Appellant's counsel made it clear to Appellant, on the record, at his sentencing hearing, that if he wanted an appeal, he would have to timely contact the public defenders' office and let them know. N.T. 10/26/15 at 26-27. Appellant failed to timely contact his counsel, and as a result, failed to demonstrate to counsel that he wished to appeal.

Appellant also failed to show that he would have appealed a non-frivolous issue. Because he pled guilty and his sentence was legal and did not exceed the statutory maximum, Appellant recognizes that the only thing that he potentially could have challenged were the discretionary aspects of his sentence: when asked at the PCRA hearing whether he ever wanted to appeal anything besides the length of the sentence, he responded "No." N.T. 10/20/17 at 15. However, Appellant waived any appeal of discretionary sentencing factors when he failed to file a post-sentence motion (or timely instruct his counsel to file said motion). Therefore, any appeal would have been frivolous and immediately dismissed. A rational defendant would not file such a petition, so counsel was not ineffective for not filing it.[3]

---

[3] Even if Appellant had not waived his discretionary sentence appellate claim, an appeal would most likely have failed, as the court's sentence was legal, rational, and well-reasoned, as explained in section II (A), *infra*.

It should be noted that even if Appellant had successfully proved a duty to consult, his claim would still fail because the court also found that he failed to demonstrate that he would have appealed. His only attempt to contact his attorney during the appeals period was one untimely and unclear letter. Ex. P-2. Appellant then failed to respond when his attorney sent him two subsequent letters, despite the fact that his appeal period was still pending when his attorney contacted him. N.T. 10/20/17 at 37-38. Appellant took no action for almost a month before sending an unfiled pro se appeal to the defenders association. Ex. P-3. The Chief of the Appeals Division at the Philadelphia Public Defenders Association responded to Appellant, informing him that the notice of appeal was never docketed, and "since it was both dated and sent after the time for filing a notice of appeal had passed, it will not result in an appeal being heard by the Pennsylvania appellate courts." Ex. P-7; N.T. 10/20/17 at 35. Appellant took no action for over two more months before filing the present PCRA. N.T. 10/20/17 at 37. As such, the PCRA court properly determined that Appellant failed to prove that counsel was ineffective for not consulting with him about an appeal.

## II. Appellant's counsel was not ineffective when it did not file a timely post-sentence motion or continue to consult Appellant about a post-sentence motion.

The PCRA court properly found that Appellant's counsel was not ineffective when it did not file a post-sentence motion or continue to consult Appellant regarding a post-sentence motion. Appellant failed to show that he timely asked his counsel to file a post-sentence motion or that filing said motion would have affected the outcome of his case in any positive way.

### A. Counsel was not ineffective when it did not file a timely post-sentence motion.

The PCRA court ruled that Appellant's counsel was not ineffective in not filing a timely post-sentence motion because Appellant never asked her to do so, but more importantly, because Appellant failed to show that he was prejudiced by this inaction in any way.

Appellant did not timely ask for a post-sentence motion. Appellant claimed that he asked his attorney for an appeal at sentencing and later sent her a letter asking for a time reduction: however, this court has already demonstrated in section I (A), *supra*, that it did not find the former claim credible and that it found the letter to be untimely. As Appellant did not claim to attempt to contact his attorney at any other time during the ten days after his sentencing, he has failed to prove that he timely asked for a post-sentence motion. His attorney filed a post-sentence motion the very day that she received Appellant's untimely request to do so: this demonstrates that if she had any idea that Appellant wanted to file a timely post-sentence motion, she would have done so. N.T. 10/20/17 at 34-35.

Assuming, *arguendo*, that Appellant asked his attorney to file a post-sentence motion, his claim is without merit, as Appellant failed to show that he was prejudiced by his counsel's inaction. To prove that his counsel has been ineffective in failing to file a post-sentence motion, a defendant must show that he was actually prejudiced. *Commonwealth v. Reaves*, 923 A.2d 1119 (Pa. 2007) (holding that prejudice is required because, while it does waive discretionary sentencing issues, a failure to file a post-sentence does not waive a defendant's right to appeal completely).

To show prejudice, a court should focus on the outcome of the post-sentence motion proceeding itself rather than any possible effects the motion would have on an appeal. *Id.* at 154. In *Commonwealth v. Reaves*, the Superior Court incorrectly found prejudice based on the fact that counsel's failure to file a post-sentence motion (based on discretionary sentencing factors) destroyed the opportunity for an appeal; the Pennsylvania Supreme Court held that the Superior Court erred and should have focused on whether the post-sentence motion would actually have had an effect at the trial level. *Id.* In that case, because the PCRA court was the same as the sentencing court and made it clear that it would not have changed the sentence had a post-sentence

motion been filed, the defendant failed to show prejudice, and his ineffective counsel claim failed. *Id.*

In this case, as in *Reaves*, the PCRA court was the same as the sentencing court and determined that, had Appellant filed a timely post-sentence motion, the court would have denied it. This is further evidenced by the fact that when Appellant's attorney filed an untimely post-sentence motion, the court denied it. N.T. 10/20/17 at 35. Appellant's sentence was legal, fair, and appropriate.

The sentencing court had a plethora of reasons for giving Appellant an aggravated sentence and for refusing to reduce that sentence. Appellant had a long, violent criminal history, he racked up misconducts in prison previously, this was his "second strike," and Appellant ran from the police. 18. Appellant made many shocking statements about the case from prison, such as "I wasn't in the wrong;" "All I did was choke . . . her out and threw her in the closet door a couple times, real shit;" "choked her the fuck out, she got fucked up;" "[Y]eah, I'm cool with the assault. That's what the fuck it was. I balled her the fuck up;" "[Y]ou dumb bitch... Like what the fuck is wrong with you? Here you go, my fault, like I said after I choked you the fuck out;" and "I definitely put my hands on her. We ain't even going to play no games." N.T. 10/26/15 at 18; Com.'s Sentencing Mem. at 2-4. His prison calls also reveal that he tried to get an associate to bribe and intimidate the victim. N.T. 10/26/15 at 18.

Appellant's presentence investigator called him "manipulative," stated that he "did not appear to feel any trepidation over his current standing with the Court or about the crime he committed, and seemed to have a sense of entitlement. He blamed his current standing with the Court on the victim in the matter." Presentence-Psychiatric Rep. for Michael Crump at 3; N.T. 10/26/15 at 19. Appellant also told his investigator "Look, there was a fight and somebody lost,

she's just bitter." Presentence-Psychiatric Rep. for Michael Crump at 3; N.T. 10/26/15 at 19. The court also considered the fact that when Appellant had the chance to speak directly to the court, he characterized the crime as a "little fight" and announced his doubt that the victim was actually traumatized. N.T. 10/26/15 at 23-24.

Finally, the court also considered that the victim "still struggles with fear, anxiety, and sleeplessness" and that her five-year-old son who witnessed the assault "is afraid to leave her side, fearful that [someone] will try and hurt her." N.T. 10/26/15 at 21-22.

The court, which considered all relevant reports, the statements of Appellant, his attorney, and the district attorney, summed up its reasons for Appellant's sentence of nine to twenty years on the record in detail:

> [W]hat is really troubling to me are the things that you said[;] not only your actions for choking this young lady, but also the things that you said in prison. You said that you weren't in the wrong. You repeatedly said that. You did acknowledge that you should have handled things differently, but then you started calling her all kinds of derogatory names and you said that that bitch crazy. Caught that bitch in my shit, and then that's when you continued on to a tirade of profanity. And it's these things that show me that even though you say that you wish you handled things differently, you do things to show me that there really is a lack of remorse and that you don't really feel what you did was wrong, and it was. And it's very troubling. And even if someone is ignorant enough to spit in your face, that's your reaction. That's troubling. You've got to learn how to handle things differently. All right. After I reviewed the presentence investigation, I reviewed all the reports for the purpose of the sentencing, and I've heard the attorney's argument on both sides, and I've also heard you [Appellant]. [...] I was troubled by your prison tapes, your lack of remorse, that you choked her and I saw the pictures with the bruising and the scars on this young lady. Her son came in and witnessed this.

N.T. 10/26/17 at 24-27. The court's sentence for Appellant was, therefore, appropriate.

Because of all of the troubling sentencing factors listed above, the PCRA court (which was also the sentencing court) was certain that, had Appellant filed a timely post-sentence motion to shorten his discretionary sentence, it would not have been granted. In fact, upon reconsideration of Appellant's shocking behavior, the court might even have given him a longer sentence. As a

result, as in *Reaves*, Appellant failed to show prejudice, and his claim that counsel was ineffective for not filing a post-sentence motion was properly denied.

### B. Counsel was not ineffective when it did not continue to consult Appellant regarding a timely post-sentence motion

Finally, counsel was not ineffective when it did not continue to consult Appellant regarding a timely post-sentence motion. Counsel only has a duty to consult a defendant on his appellate options when either the defendant has asked for her to do so, or when a rational defendant in his case would want to appeal. *Commonwealth v. Bath*, 907 A.2d 619, 623 (Pa. Super. 2006). In section I, *supra*, it was established that Appellant failed to show that he wished to file an appeal, failed to establish that a rational defendant would have appealed, and failed to show that any prejudice resulted from his counsel's actions. In section II (A), *supra*, it was established that the court held that Appellant failed to show that he wished to file a timely post-sentence motion and that Appellant was not prejudiced in any way when his counsel did not file one. Counsel made it clear to Appellant that he would have to contact her within ten days if he wanted to file a post-sentence motion; Appellant did not do so. N.T. 10/26/15 at 26-27. Additionally, the court would have either denied this post-sentence motion or increased Appellant's sentence. Appellant experienced no prejudice when his counsel did not consult with him about a post-sentence motion. Therefore, the court properly dismissed his PCRA petition.

## CONCLUSION

After reading the applicable evidence, statutes, case laws, and rules, this court has committed no prejudicial or reversible errors in Appellant's case. Accordingly, the PCRA court's decision should be affirmed.

BY THE COURT:

_____
Lane, J.

*Commonwealth v. Michael Crump* *CP-51-CR-0011569-2013*

## **PROOF OF SERVICE**

I hereby certify that I am this day serving the foregoing opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Defense Attorney:    Jennifer J. Tobin, Esq.
702 N. 3rd St.
Philadelphia, PA 19123

Type of Service: (x) First Class Mail ( ) Certified ( ) Personal Service

District Attorney:    Larry Goode, Esq.
Interim Supervisor, Appeals Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service: (x) First Class Mail ( ) Certified ( ) Personal Service

Date: May 30, 2019

Katelynn Storm, Esq.
*Law Clerk to the Honorable Timika Lane*