J-A12045-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MITCHELL E. MONAGHAN | : | |
| | : | |
| Appellant | : | No. 161 WDA 2020 |

Appeal from the PCRA Order Entered January 8, 2020,
in the Court of Common Pleas of Jefferson County,
Criminal Division at No(s):  CP-33-CR-0000419-2009.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    FILED JULY 07, 2020

Mitchell E. Monaghan appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act.  42 Pa.C.S.A. §§ 9541-9546. We affirm.

The pertinent facts and procedural history may be summarized as follows.  On May 5, 2010, Monaghan entered a guilty plea to the possession with intent to deliver cocaine and heroin.  That same day, the trial court imposed a sentence of 2½ to 5 years of imprisonment and a consecutive three-year probationary term.  Monaghan was paroled from state

_____

[*] Retired Senior Judge assigned to the Superior Court.

incarceration in April of 2011.[1]  Monaghan committed new crimes in 2012, which resulted in the revocation of his parole, and he was recommitted for twenty-four months.

Monaghan was reparoled in August of 2014.  His maximum sentence of incarceration expired in November 2016, and he began serving his three years of probation.  On January 23, 2017, the county adult probation department filed a notice of a Gagnon I hearing,[2] based on an incident of domestic violence that occurred approximately two weeks earlier.  Although the charges originally filed as a result of this incident were withdrawn, the trial court found probable cause to revoke based upon technical violations, and scheduled a Gagnon II hearing.  Although Monaghan held been represented by a county public defender to this point, the public defender's office withdrew.  Monaghan appeared with privately-retained counsel ("revocation counsel") at the hearing held on February 15, 2017.  At the hearing, Monaghan admitted the violations, but the trial court still heard testimony from Monaghan's state parole agent, as well as Monaghan's girlfriend and her sister.

After hearing this testimony, the trial court found that Monaghan violated his probation.  The trial court requested an updated presentence

_____

[1] The facts regarding Monaghan's state parole history are taken from his parole agent's testimony at a hearing held on February 15, 2017.  See N.T., 2/15/17, at 7-8.

[2] Gagnon v. Scarpelli, 411 U.S. 778 (1973).

report and continued the hearing to another date. On March 1, 2017, the hearing reconvened and the trial court heard argument from revocation counsel and Monaghan made a statement to the court. Although adult probation recommended a minimum sentence of 7½ years, the trial court imposed a new sentence of 4 to 15 years of imprisonment.

Although he never entered his appearance, Attorney David Shrager, who was hired by Monaghan's family, filed a timely post-sentence motion for reconsideration, which the trial court denied by order entered March 13, 2017. Monaghan did not file a direct appeal.

On December 18, 2017, Monaghan filed a pro se PCRA petition in which he asserted, inter alia, that revocation counsel "rendered ineffective assistance of counsel for failing to advise, consult or make a reasonable effort to discuss with [him] his right to appeal." PCRA Petition, 12/18/17, at 3. The PCRA court appointed counsel. Monaghan was reparoled in May 2018.[3]

On August 19, 2019, PCRA counsel filed a motion for an evidentiary hearing.[4] On October 11, 2019, the PCRA court held an evidentiary hearing

_____

[3] See N.T., 10/11/19, at 12 (Monaghan testifies he served eighteen months before being reparoled).

[4] Although it appears that PCRA counsel successfully sought an order from the court requiring revocation counsel to return Monaghan's file, there is no other explanation for the almost two-year delay between Monaghan's filing of his pro se PCRA petition, and PCRA counsel's request for an evidentiary hearing. Our Supreme Court has made clear that "[t]he PCRA court [has] the ability and responsibility to manage its docket and caseload and thus has an essential

at which both Monaghan and revocation counsel testified. By order entered January 8, 2020, the PCRA court denied Monaghan's PCRA petition. This timely appeal followed. Both Monaghan and the PCRA court have complied with Pa.R.A.P. 1925.

Monaghan now raises the following issue:

> 1. Did the [PCRA] court err in denying [Monaghan's] PCRA petition when the court failed to find that [revocation counsel] was ineffective for failing to consult with [him] in a meaningful way subsequent to [the] imposition of [the] revocation sentence . . . as to the advantages and disadvantages of taking a direct appeal[?]

Monaghan's Brief at 4.

Under the applicable standard of review, we determine whether the ruling of the PCRA court is supported by the record and is free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record. Commonwealth v. Barndt, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted). We apply a de novo standard of review to the PCRA court's legal conclusions. Commonwealth v. Blakeney, 108 A.3d 739, 749 (Pa. 2014).

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA

_____

role in ensuring the timely resolution of PCRA matters." Commonwealth v. Renchenski, 52 A.3d 251, 260 (Pa. 2012) (citation omitted).

- 4 -

appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions de novo.

Commonwealth v. Reyes-Rodriguez, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

Monaghan's claim alleges the ineffective assistance of revocation counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." Id. This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. Id. at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. Commonwealth v. Martin, 5 A.3d 177, 183 (Pa. 2010).

When a defendant does not explicitly instruct counsel to file a direct appeal, counsel may still be found ineffective if counsel does not consult with the defendant about his appellate rights. *Commonwealth v. Touw*, 781 A.2d 1250 (Pa. Super. 2001). In *Touw*, this Court recognized that in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), "the United States Supreme Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Touw*, 781 A.2d at 1254 (citing *Flores-Ortega*, 528 U.S. at 478)). We then cited the following from *Flores-Ortega*:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Touw*, 781 A.2d at 1254 (citing *Flores-Ortega*, 528 U.S. at 480)).

"A deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his or her appellate rights." *Touw*, 781 A.2d at 1254. As we noted, the High Court in *Flores-Ortega* held that, in order "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Touw*, 781 A.2d at 1254 (citing *Flores-Ortega*, 528 U.S. at 484)).

Here, the PCRA court summarized its factual findings given the testimony from the evidentiary hearing as follows:

In his discussions with Monaghan prior to sentencing, [revocation counsel], explained that the [trial court] had broad sentencing discretion. The result, he advised, could be anywhere between a time-served sentence and one ending with a 15-year maximum. Monaghan was nonetheless unprepared for the latter and was stunned when the [trial court] ordered him to prison for 4-15 years. His only comment to [revocation counsel] before leaving the courtroom, though, was that the sentence was harsh. [Revocation counsel] agreed but indicated that there was nothing he could do about it.

[Revocation counsel] and Monaghan spoke again that afternoon, but the subject of an appeal was not broached. [Revocation counsel, Monaghan] said, was only concerned with getting paid and walked away upon learning that [Monaghan] did not have the money to compensate him for his appearance that day. [Revocation counsel], meanwhile, could not recall the substance of their post-hearing conversation but knew Monaghan's rendition did not comport with his general practice. Monaghan, in any event, knew he could appeal the sentence but did not indicate that he wanted to so, and [revocation counsel], who well understood the deference afforded to sentencing judges and had conveyed as much to [Monaghan], had no intention of pursuing post-sentence motions or an appeal.

His own intentions notwithstanding, [revocation counsel] knew within days that [Attorney David Shrager] was in the process of preparing post-sentence motions on [Monaghan's] behalf. He even supplied documentation to assist his colleague in that endeavor but, as was his habit, did not withdraw his own appearance. Meanwhile, although [Attorney] Shrager filed post-sentence motions for [Monaghan] on March 10, 2019, he did not make himself attorney of record and did not file a direct appeal after the post-sentence motion proved unsuccessful.

Monaghan was far from ignorant of the procedural path his case was taking. He had spoken with members of his

family and knew they had retained [Attorney Shrager] "for the appeal." [Monaghan] did not communicate with [Attorney] Shrager directly at any point, though, and when he received a copy of the [trial court's] order denying his post-sentence motions, he did not reach out to either [Attorney] Shrager or [revocation counsel] about a direct appeal.

PCRA Court Opinion, 18/20, at 1-2.

Monaghan asserts that "under the above circumstances there would be reason to believe that [revocation counsel] was aware [he] would want to file a motion to modify sentence, and that [he] would, assuming that motion were denied, want to file a direct appeal from the revocation sentence imposed by the court attacking the discretionary aspects of that revocation sentence." Monaghan's Brief at 10.

The PCRA court found no merit to this claim. Given its factual findings, the PCRA court concluded that Monaghan did not prove prejudice because the "duty" required of revocation counsel by Touw and Flores-Ortega, "never attached." Id. at 3. The court explained:

This was not a case where a defendant stood before the court with little understanding of what might happen next. Rather, Monaghan knew from discussions with [revocation counsel] that sentencing was entirely at the [trial court's] discretion and that it had the authority to exercise its discretion anywhere within the pendulum of no sanction to a maximum term of imprisonment. He also knew he had the right to appeal any sentence the [trial court] imposed. As far as the record reflects, however, he did not indicate ahead of time that he wanted to take an appeal if it was the latter, while there is no question that he did not request an appeal afterward.

Under the circumstances, moreover, [revocation counsel] had little reason to think he needed to initiate a

post-sentence, appeal-specific conversation. Though he knew ahead of time what could happen, Monaghan did not say, "I want to appeal if I get more than . . .," and when [revocation counsel] said there was nothing he could do about what [Monaghan] characterized as a "harsh" sentence, Monaghan again said nothing about wanting to appeal. What both knew, though, was that the minimum could have been 7½ years and that Monaghan would be eligible for parole in less than a year. That being the case, it would be disingenuous to say that [Monaghan's] silence should have given [revocation counsel] notice that he wanted to appeal.

Even assuming there was a level of unreasonableness in [revocation counsel's] failure to consult with Monaghan, his duty under Touw was fully discharged after he learned first-hand that [Attorney] Shrager was going to further pursue the matter. [Revocation counsel] surely realized at that point that [Monaghan] did in fact want to explore his post-sentencing options. In light of [Attorney] Shrager's involvement, and having not heard from Monaghan since the date of sentencing, however, there was no cause for [revocation counsel] to conclude that he needed to go back and ascertain whether [Monaghan] wanted to file a direct appeal. Whereas Monaghan understood from what his family told him that [Attorney] Shrager was engaged for "the appeal," moreover the [the PCRA court] can reasonably conclude that [Monaghan] did not even expect [revocation counsel] to file one for him.

Though the [PCRA court] does not question the veracity of Monaghan's assertion that he wanted to file a direct appeal, therefore, his own silence after sentencing, coupled with his consent to [Attorney] Shrager's involvement, defeats his claim that [revocation counsel] was ineffective for failing to consult with him regarding the advantages and disadvantages of going that route.

PCRA Court Opinion, 1/8/20, at 3-4.

Our review supports the PCRA court's conclusion. In short, the PCRA court found that Monaghan was aware of his right to appeal, along with its

advantages and disadvantages prior to the imposition of his revocation sentence. We cannot disturb this credibility determination. See Commonwealth v. Harmon, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

In arguing to the contrary, Monaghan assails the PCRA court's placing "great weight" on the fact that Attorney Shrager filed a post-sentence motion on his behalf, since revocation counsel remained his attorney of record. Monaghan's Brief at 14. Although revocation counsel never withdrew his appearance as attorney of record, and Attorney Shrager did not enter his appearance before filing the post-sentence motion—in which Monaghan challenged his sentence as excessive—given the unique facts of this case, we agree with the PCRA court that Monaghan could not establish prejudice under the Touw and Flores-Ortega standard. We therefore affirm the PCRA court's order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2020

- 10 -